## GRIFFIN et al. v. MILLER, Appellant.

### Division Two, May 16, 1905.

1. **DEED: Delivery: Unconditional.** Unless there is an unconditional delivery of a deed during the lifetime of the maker, a clause therein that it is not to be delivered during the maker's lifetime is not waived.

2. **REFORMING DEED: Proof.** The prima facie presumption is that a written instrument exhibits the ultimate intention of the maker, and that all previous proposals and negotiations have been abandoned; and, therefore, the burden rests upon one seeking to have it reformed to show, by satisfactory and clear evidence, that a mistake was made in inserting a clause which it contains.

3. ———: ———: **Delivery.** A deed contained a condition that it was to be held in the maker's possession till his death, and the scrivener who wrote it testified that he inserted the clause of his own motion for the protection of the grantor and that he read the deed over to the grantor twice before he signed it.

*Held,* that, although the grantor may not have intended to insert the clause in the deed, yet it must be presumed that, in view of the fact that it was read over to him twice before the deed was executed, he knew the condition was in the deed and that it expressed his desire and intention; and, having held it for over a year thereafter, it must be held that there was no evidence which would justify a court of equity in striking out the clause.

4. ———: Delivery After Death: Mistake of Law. Where the evidence discloses simply a mistake of law in the grantor, in supposing his deed could be delivered after his death, and not a mistake of fact, in having a clause inserted therein that it was not to be delivered until after his death, a court of equity will not reform the deed by striking out the clause.

Appeal from Polk Circuit Court.—*Hon. Argus Cox,* Judge.

AFFIRMED.

*C. H. Skinker* and *E. D. Upton* for appellant.

(1) To establish a mistake it is not necessary to show that particular words were intended to be used, but it is sufficient to show that the contract or deed as executed does not effectuate the intention of the parties. Leitensdorfer v. Delphy, 15 Mo. 160; 2 Pom. Eq. Jur. (2 Ed.), sec. 845; Am. & Eng. Dec. Eq., 239, note; 66 Mo. 519. Even if the party heard the deed read and supposed its legal effect was different from that given it by law, still it may be reformed. Corrigan v. Tiernay, 100 Mo. 276. (2) The mistake of Crow, the justice of the peace, in inserting the objectionable clause in the deed was a mistake of fact, and not a mistake of law. Bush v. Merriman, 87 Mich. 260; Gross v. Lehr, 47 Pa. 520. (3) Where a reformation of a deed would be decreed between the original parties thereto, similar relief will be given in suits between parties claiming under them. Hagman v. Shaffner, 88 Mo. 24. As the evidence conclusively shows that Collon McIntosh intended to convey the land in controversy to his son, J.

H. McIntosh, and that after the execution of the deed he considered that he had conveyed it to him, and as the justice of the peace who wrote the deed and all of the parties thereto supposed it was a valid conveyance, and intended it as such, the mistake of the justice in inserting the clause because he thought it would "protect the old folks" should not be allowed to defeat the conveyance, and the deed should be reformed by striking out said clause. (4) A deed cannot be delivered to the grantee as an escrow. 15 Central Law Journal 162; Jones v. Shaw, 67 Mo. 667. (5) "In the construction of deeds, words are not the principal thing, but the intent and design of the parties; and, therefore, when there are words in a deed that appear repugnant to the other parts of it, and to the general intention of the parties, they will be rejected." 4 Greenl. Cruise, 307; Jamison v. Fopino, 48 Mo. 194; Briant v. Garrison, 150 Mo. 655; Blanchard v. Morey, 56 Vt. 170; McDowell v. Brown, 21 Mo. 57.

*Ross & Sea* and *Rechow & Pufahl* for respondents.

(1) This case having been once decided by this court that decision becomes the law of the case upon the points passed upon. Com. Co. v. Bank, 35 Mo. App. 472; McKinney v. Harral, 36 Mo. App. 337; Lane v. Railroad, 35 Mo. App. 567; Keith v. Keith, 109 Mo. 130. (2) The evidence of delivery or the waiver of the condition is less satisfactory than it was on the first trial. Griffin v. McIntosh, 176 Mo. 392. And the court having there held that there was no delivery that holding is conclusive on this appeal. (3) There is no evidence to warrant a reformation. There is not the slightest pretense that the grantor did not know that the clause was in there. In order to warrant the reforming of an instrument, the evidence must be clear and convincing that the instrument does not express the intention of the parties. Steinburg v. Ins. Co., 49

Mo. App. 255; Sweet v. Owens, 109 Mo. 1; Cooper v. Deal, 114 Mo. 527; Bartlett v. Brown, 121 Mo. 362; Fanning v. Doan, 139 Mo. 410; Parker v. Vanhoozer, 142 Mo. 627; Bender v. Zimmerman, 145 Mo. 636. (4) A court will not grant relief against a mistake of law. State ex rel. v. Ewing, 116 Mo. 129; State ex rel. v. Shipman, 125 Mo. 436; Hendrix v. Wright, 50 Mo. 311; Price v. Estell, 87 Mo. 386; St. Louis v. Priest, 88 Mo. 612.

GANTT, J.—This is the second appeal in this cause. The first appeal will be found in the 176 Mo. 392, under the style of Susan B. Griffin et al. v. J. H. McIntosh.

The judgment on the first appeal was reversed and the cause remanded.

After the first cause had been appealed and before the reversal in this court, the defendant McIntosh conveyed the land to Miller, and the latter was substituted as defendant. On the trial anew in the circuit court judgment was rendered for the plaintiffs, and the defendant Miller appeals.

The action now, as then, is one in ejectment to recover two undivided eighths of certain real estate in Polk county, by plaintiffs as heirs at law and children of Collon McIntosh and Jane his wife.

The answer admits that Mrs. Griffin and Mrs. Wingfield are two of the eight children and heirs at law of Collon McIntosh and Jane McIntosh his wife, both deceased. Defendant further alleges that said Collon McIntosh and Jane his wife conveyed to James McIntosh, another of the children and heirs of said Collon McIntosh, the land in controversy, and that thereafter said James H. McIntosh conveyed to the defendant Miller sixty acres of said land therein; that at the time of the making of the deed from Collon McIntosh to James McIntosh the grantor was old, feeble and illiterate; that by the mistake of the scrivener and without

the direction or knowledge of the grantor the following clause was inserted in the deed, which is in the form of a general warranty deed, except as to said clause: "Upon this express condition that the said Collon McIntosh and Jane McIntosh is to live on the farm till their death as one of the family and to hold the deed in their possession till their death, then this deed is to be delivered to James H. McIntosh or his heirs."

The defendant alleges that the said deed was made in consideration of the support, care, nursing and attention given Collon McIntosh by James H. McIntosh, and that said deed was delivered in the lifetime of the grantor. He prays that the deed be reformed so as to show the true intention of the grantors by striking out the clause above stated, and that a full and perfect and complete title be declared to be vested in him.

On the former appeal it was held by this court that the said instrument was testamentary in character and did not pass a present interest in the land to the grantee and hence was not good as a deed, although all the parties thereto intended that it should take effect at the maker's death; and that the evidence showed that in turning over the deed to the grantee, Collon McIntosh did not make an unequivocal delivery and relinquishment thereof, and the authorities were cited authorizing that conclusion.

By the answer in this case it will be observed that the defendant seeks to have said instrument reformed by striking out the testamentary condition above recited, and the sole question presented is whether the circuit court erred in refusing the reform of the instrument as prayed by the defendant. As in the former case, the evidence tends to show that, at the time of the execution of this instrument, Collon McIntosh and his wife were old people and were growing very feeble, and that James McIntosh at their request had gone to live with them and had cared for and attended the old man up to the time of his death; that Collon Mc-

Intosh requested John W. Crow, a justice of the peace in said county, to draw a deed from said Collon and Jane McIntosh to said James H. McIntosh. The justice testified that he went over to the residence of Collon McIntosh and they talked freely about the matter; that he inserted the said condition that Collon and his wife were to live on the farm until their death as one of the family and to hold the deed in their possession until their death, of his own motion; that the old man did not direct him to put that clause in there; that he did it to protect the old man; that he did not remember that he read the deed *twice* to him before it was executed, but that he did read the deed over to him; that he always read a deed over to anybody for whom he wrote one; and that he remembers that he read this deed over to him before it was executed; that his memory was better when he testified on the former trial in relation to just what took place when the deed was made than it is now; that he did not remember how he testified before, but that he read this deed and this clause to him before it was executed; that the old man knew it was in there, and made no objection to it, and did not say anything about it, and that both the old man and the old lady knew this condition was in there, because he read it over to them.

Mr. Templeton, the official stenographer of the court, testified that he took the evidence on the former trial and made a transcript of the testimony in that case. He produced his notes of the evidence in which it appeared that the justice, Mr. Crow, testified in answer to the question, ''Q. Did the old man know it [this condition] was in there? A. Of course he did, I read it over twice to him.'' Mrs. Crane, a daughter of Collon McIntosh, testified that her father told her he had destroyed a will which he had made devising the land to her and James H. McIntosh, and had made Tom a deed to the one hundred and ten acres; that she was at her father's house about two weeks before he

died; that he said he was aiming to come up and see her; that on that occasion he told her mother to get the deed and give it to Tom, and Tom would take care of it. On cross-examination she said her father said, '' 'Tom can take care of it;' he said he would just give it into Tom's care and he would take care of it.''

John McIntosh, another son, testified that he was at his father's house about two weeks before he died, and stepped into the room where his brother James H. and his sister Mrs. Crane were with his father and mother just as his mother was handing James H. a deed. At the suggestion of James H. he asked his father if he might accompany James H. to Fair Play where he could put the deed in the bank until James H. could have it recorded, and his father said that he might. The brother and he went to Fair Play and gave the deed to John Painter; that he, John, never read it until after his father's death. There was evidence that Collon McIntosh was a man of ordinary business capacity, and could read and write. On the former appeal it was earnestly urged by counsel for James H. McIntosh that notwithstanding the instrument expressly stipulated it was not to be delivered until after the death of Collon McIntosh, the old man waived that condition and delivered it in his lifetime, and that it became effectual from the moment of its delivery. Upon the examination of the evidence on that point we held that giving the testimony its full effect it did not amount to proof of unequivocal delivery and relinquishment of all dominion over the deed, and a waiver of the plain condition therein written.

On a re-examination of the testimony heard on the first trial and reproduced in this and the additional testimony taken on the last trial we think there is no substantial difference in the evidence upon the first and the last trial, and we still adhere to our former decision that there was not an unconditional delivery of the deed in the lifetime of Collon McIntosh, and that there

was no evidence that he waived the express condition in the deed.

It remains only to determine whether the circuit court correctly ruled that the evidence was insufficient to justify it in reforming the deed by striking out the express condition that Collon McIntosh and his wife were to hold the deed in their possession until their death after which it was to be delivered to James H. McIntosh or his heirs.

The equitable doctrine on this subject is well established. At the common law when a contract or agreement of parties was committed to writing and was complete on its face, it was conclusively presumed that all prior negotiations were merged in the writing and parol evidence was inadmissible to contradict or vary the terms of the contract or agreement as shown by the writing. But from time immemorial courts of chancery have exercised the right to correct written instruments which have been erroneously framed, as where it is admitted or proven that an instrument intended by both parties to be prepared in one form, has, by an undesigned insertion or omission, been prepared or executed in another. But while a court of equity will correct a mistake in a written instrument, the evidence that there has been a mistake should be clear and convincing, because in equity, as in law, the prima facie presumption is indulged that the written contract or instrument exhibits the ultimate intention, and that all previous negotiations and proposals have been abandoned. The burden, therefore, is upon the party asserting the mistake. [Parker v. Vanhoozer, 142 Mo. l. c. 627; Sweet v. Owens, 109 Mo. 1.] Moreover, the mistake must be mutual and both the agreement and the mistake must be made out by satisfactory and clear evidence.

On this point also we expressed our opinion when this cause was in the court on the former appeal that Collon McIntosh knew this condition was in this deed;

as to this we do not think there can be any doubt. Crow, the defendant's own witness, testified on the former trial that he read it over to him *twice* before he signed and acknowledged it; that he, Crow, intentionally put that condition in the deed for the old man's protection. Nor are we left entirely to the deed itself to ascertain the intention of Collon McIntosh. While he may not at first have thought of inserting this condition in the deed, yet when it was read over to him *twice* before he signed it, it must be presumed that he knew the condition was in the deed and that it expressed his desire in the premises. For more than a year after its execution he retained the instrument in his own possession and did not deliver it to his son, and this retention of the deed was in exact accordance with the written condition itself. There was in our opinon no evidence which would justify a chancellor in holding that this instrument did not express the intention and purpose of Collon McIntosh at the time of executing it.

The evidence discloses a mistake of law only in that he supposed that the instrument could be delivered after his death and take effect as a deed. It was not a mistake of fact on the part of the scrivener in inserting the condition, nor on the part of Collon McIntosh in adopting the suggestion of the justice.

The evidence that there was any mistake in the drawing of this instrument is too indefinite to justify a court of equity to change or reform it now. To do so would be to disturb well-settled principles of law.

The instrument must stand as it was written and acknowledged by the grantor, and the judgment must be and is affirmed.

*Fox, J.*, concurs; *Burgess, P. J.*, absent.