## NEW YORK LIFE INSURANCE COMPANY, Appellant, v. WOLFSON, Respondent.

### St. Louis Court of Appeals, April 2, 1907.

1. **EVIDENCE: Parol Evidence to Vary Written Contract: Merging of Previous Conversation.** All oral conversations looking to an agreement are merged into a writing subsequently executed and are not admissible in evidence to show the contract.

2. ———**: Two Writings, One Contract.** Where two instruments were executed by the same parties at the same time with reference to the same matter, they are to be construed together as one contract.

3. ———**: Parol Evidence to Vary Written Contract: Receipts.** Where an agent for an insurance company had a written contract providing that he should receive certain weekly advances to be treated as a loan and repaid by him, and his receipts for the same explained and corroborated the other writing, parol explanation was not admissible.

4. ———**: Construction of Writing by Court.** In an action by the insurance company to recover such advances from the agent, the contract and the receipts constituting the written agreement were to be construed by the court as a matter of law and a question of fact did not arise thereon for the jury.

Appeal from St. Louis City Circuit Court.—*Hon. Jesse A. McDonald*, Judge.

REVERSED AND REMANDED *(with directions)*.

*O'Brien & Collier* and *G. W. Wellman* for appellant.

(1) The court corrected said error by its second instruction given at appellant's request, and the verdict rendered in despite of said instruction was without a scintilla of evidence to support it and the two instructions are to be taken together. Montgomery v. Railroad, 181 Mo. 508. (2) Taking the second and first instructions together a verdict for defendant should be set aside as being conclusively shown to be arbitrary and dictated by prejudice. Uhrich v. Osborn, 106 Mo. App. 492; Hes-

selbach v. St. Louis, 179 Mo. 505; Strode v. Abbott, 102 Mo. App. 169; Jeans v. Morrison, 99 Mo. App. 208. (3) As the questions of fact submitted in instructions 1 and 2 were dependent upon the language of the contract of employment, the letter offered in evidence by respondent and his admission that he earned no commissions, it was error in the trial court to refuse to direct a verdict for appellant. Asphalt Co. v. Transit Co., 102 Mo. App. 469.

*O. C. Phillips* for respondent.

NORTONI, J.—This suit originated before a justice of the peace. It is on an account stated for sixty dollars alleged to have been loaned or advanced by the plaintiff insurance company to the defendant, who was at the time one of its insurance solicitors. It appears that on June 2, 1902, the plaintiff and defendant entered into a written contract whereby the plaintiff insurance company employed the defendant to solicit for it in the city of St. Louis, for which said services the defendant was to receive a certain per cent as commissions varying with the different forms or classes of insurance procured by him. Clause number twenty of this contract provided, among other things: "It is agreed that said party of the second part (defendant) shall be allowed under this agreement the following compensation only, unless otherwise expressly stipulated in writing. (Specifying percentage on the various policies.)" By clause twenty-one of the contract, it is provided: "It is agreed that this agreement shall take effect on the 2nd day of June, 1902, if duly signed by said party of the second part, and a facsimile by the president, a vice-president or the superintendent of agencies of said party of the first part, and is further countersigned, on behalf of said party of the first part, by its contract registrar at the home office of said party of the first part, and by one of its agency directors or managers." It is shown that the home office

of the company and all those who were authorized to sign the contract on its behalf, except the agency director, were in New York City. The contract was forwarded thereto for signature, and prior to its return, the defendant informed Mr. Talbot, plaintiff's agency director at St. Louis, who had conducted the negotiations pertaining to such contract on behalf of the company and under whom he was to perform the duties enjoined thereby, that he would be unable to carry out his undertaking unless he had as much as $12.50 per week with which to support himself and family; whereupon Mr. Talbot replied, in effect: "I will do better than that; I will let you have $2.50 more for cigars and make it fifteen dollars per week;" whereupon Talbot dictated the following memorandum supplementary to the contract of agency to that effect and signed the same, which was accepted by and delivered to the defendant and signed by him, as appears by his signature and indosrement thereon to that effect.

"St. Louis, Mo., June 2, 1902.

"Mr. Leo Wolfson,
        St. Louis, Mo.

"Dear Sir:—Referring to your agreement with this company taking effect this day, subject to all the terms and conditions thereof, it is understood that, during the month of June you shall be advanced at the rate of $15 per week. It is also understood and agreed if, during the month of June, you secure $2,000 of insurance on which the original first year's premiums are paid to the company in cash, then said advance will continue during the month of July.

"It is also understood and agreed that if, during the month of July, of the continuance of your agreement, you secure $5,000 of insurance on which the original first year's premiums are paid to the company in cash, then the said advance will continue during the month of August.

"It being distinctly understood and agreed that during the time you draw any of such advances that all the commissions accruing to you under your said agreement are hereby assigned and pledged as collateral security for the re-payment of said advances and until same are wholly repaid to the company.

"Yours truly,

"JOHN TALBOT,

"Agency Director.

"Accepted: Leo Wolfson."

In accord with this agreement, the defendant applied to the cashier in the company's office at St. Louis, of which Talbot was in charge, for and received fifteen dollars on account thereof for which he, at the time, executed the following receipt, omitting date line and signature: "Received from the New York Life Insurance Company fifteen dollars to be charged to my account at the company's Rialto branch office and payable on demand from commissions or other compensation accrued or accruing under any agreement between me and said company." This was repeated for three successive weeks thereafter; each week the defendant received fifteen dollars and executed a receipt, identical with that above given. Each of the several payments was at the time charged against him as a debit by the cashier in plaintiff's St. Louis office, amounting in all to four payments of fifteen dollars each, or sixty dollars. The defendant was not successful in soliciting insurance and at the expiration of the four weeks mentioned, the company made no further advancements to him on that account. About this time or soon thereafter, he quit his efforts in that behalf and embarked in another calling.

The defendant admits having received the $60 in four payments and makes no claim of having repaid the same to the plaintiff other than by his labors per-

formed at the time in distributing advertising matter and in endeavoring to procure persons to purchase its insurance. His sole and only defense is that instead of such payments being advancements or loans to him to be repaid, that he had an oral contract with Mr. Talbot, acting for the company, that he was to receive fifteen dollars per week as salary.

On the trial in the court below, the defendant introduced the letter memorandum above set out, referring to fifteen dollars weekly advancements, and by which his commissions were assigned and pledged to the plaintiff as collateral security for repayment of such advancements. In his own behalf, defendant was permitted to testify, over the objection and exception of plaintiff, to a verbal agreement entered into at the time of executing this memorandum, to 'the effect that such fifteen dollars weekly advancements were to be salary for his labors and therefore not to be repaid. He admitted having read the document, however, before signing it, and he does not attempt to impeach it for fraud. He also admits having executed each and all of the four receipts, one of which is quoted above, recognizing the transactions to have been advancements or loans to be repaid by him out of contemplated commissions to be earned by his labors in the insurance field. He says he read the receipt when first presented by the cashier and objected to signing the same with the remark that it was not their agreement; whereupon he went into the adjoining room and talked to Mr. Talbot, saying: "This is spending money that I am getting" and Mr. Talbot said: "You know the cashier has got to have a receipt; this is a matter of form; we don't expect you to do any business yet, just study it," and that he signed the same because he could not obtain any money without so doing.

The court refused a peremptory instruction to find for the plaintiff and submitted to the jury the question whether or not the transactions were loans and directed

that if they so found, to return a verdict for the plaintiff. No instructions were given on behalf of the defendant. The jury found for the defendant and plaintiff appeals.

1.  The court erred in admitting defendant's testimony over the objection and exception of plaintiff as to the alleged oral contract with Talbot. Whatever it was, it was shown to have taken place immediately preceding the execution of the writing above quoted, signed by both Talbot and defendant, which writing was the culmination of that conversation. Mr. Talbot dictated the memorandum then and there and he and the defendant signed it. The law in such cases conclusively presumes the conversation and oral agreement to have been merged in the writing then executed. [3 Page on Contracts, sec. 1356.] Further, the two instruments executed with reference to the same matter at the same time and so closely allied, are to be construed together. [Lawson on Contracts (2 Ed.), 457.] Therefore, it appears that defendant had agreed in section twenty of the contract of agency entered into with the officers in charge of the home office of the company of the same date, that the compensation allowed him therein was the only compensation he was to receive "unless otherwise expressly stipulated in writing." And in the interest of the security of contract rights, the law will not permit a party to set up a concurrent parol agreement to vary the express terms of the unambiguous writing executed at the time, in which is presumed to merge all of the stipulations of the parties with respect to the subject-matter. [Lawson on Contracts (2 Ed.), 442; Elliott on Evidence, sec. 568; 3 Page on Contracts, sec. 1356.]

2.  The four receipts recite that the defendant was to be charged with the amount received by him and that it was payable either on demand or from commissions, etc. While it is very true there is no sanctity about an ordinary receipt which protects it from being

explained or varied, and that it may be explained by parol evidence (Lawson v. Wombles, 111 Mo. App. 532-542, 86 S. W. 271), yet in this case, when taken together with the explanation of defendant, they corroborate the original writing, for they are in strict accord with its terms and spirit to the effect that the transaction constituted loans to be repaid, for which the defendant's earnings were assigned and pledged to the insurance company as collateral security.

3.     The question resolves itself, therefore, upon the construction of the contract above set out, providing for the advancements.     This contract being in writing, it was the duty of the court to construe it and adjudge its conclusions as a matter of law without reference to the jury.     [2 Page on Contracts, sec. 1129.]     There can be but one conclusion reached with respect to this matter.     It is plain that it provided for weekly loans and contemplated repayment, and as security therefor, pledged defendant's contemplated commissions as collateral security.     The defense interposed is not sufficient in law, and there remains no issue to be tried.     The judgment will therefore be reversed and the cause remanded with directions to the trial court to enter judgment for the plaintiff for the sum of sixty dollars, together with six per cent interest from the date of the institution of this suit.     It is so ordered.     *Bland, P. J.,* and *Goode, J.,* concur.