# I. B. BAKER v. J. W. McMURRY CONTRACTING COMPANY, Plaintiff in Error.

### Division Two, June 4, 1920.

1. **CONTRACT: Time for Performance: Evidence.** A contract is to be measured by its terms; and in the absence of ambiguity, evidence of preliminary conversations and negotitations is not admissible; and this rule makes inadmissible testimony that the work was to be completed within four months, a condition omitted from the contract.

2. ———: ———: **Acquiescence in Extension.** Where the time in which the work was to be performed was subsequently extended by agreement between the contractor and sub-contractor, and was acquiesced in by the railroad company, it cannot be maintained that the contractor suffered injury by reason of the failure of the sub-contractor to complete the work within the time specified in the contract between the railroad company and the contractor.

3. ———: ———: **Independent Contractor: Insolvency of Railroad.** Where a contractor has a contract with a railroad company for the construction of certain bridges, and sub-lets it to another, who has no contractual relation with the company, such other, though designated a sub-contractor, is in law an independent contractor, and his right to recover for the work performed is not dependent upon the performance by the railroad company of its contract with the contractor; nor is his right to recover impaired by the fact that the railroad company's insolvency did not occur until after the time limited in its contract with the contractor for the performance of the work had expired, although at the end of the time mentioned the railroad was paying its debts.

4. ———: ———: ———: **Construed According To Terms.** The contract with the independent contractor, to whom the contractor sub-let the work of building railroad bridges, being unambiguous, should be construed according to its own terms, and the contractor cannot escape liability thereunder because of the failure of the railroad company to comply with its contract with him.

5. **EXCLUSION OF TESTIMONY: Subsequently Admitted.** Appellant cannot complain of the action of the court in excluding certain evidence if the record discloses that it was subsequently admitted.

6. **INTEREST: Rule for Calculation: Partial Payments.** Interest is first to be calculated on an open demand up to the first partial

payment, then interest is to be added to the principal and the payment deducted, then interest is to be computed on the remainder to the second payment and added to said remainder, and then the second payment is to be deducted, and so on until the last partial payment, unless, in any case, the interest up to any partial payment exceeds the payment, in which case, the payment is to be deducted from the interest, and the excess of the interest is to be carried forward, without casting interest thereon, to the next payment that will discharge the excess.

7. ——: Wrong Calculation. If by the method of calculating interest a less amount is awarded to plaintiff by the verdict than he was entitled to according to the rule of calculating interest, defendant cannot complain.

8. CUSTOM: Instruction. An objection to plaintiff's instruction referring to a general custom; framed to meet defendant's contention in regard thereto and being the converse of defendant's, is without merit.

9. ——: Necessary Evidence. A custom to be binding must be shown to be certain, uniform, general and of long existence. It cannot be established by knowledge confined largely to transactions in which the witness's company had been interested, who is contradicted by the other party. In such case an instruction basing a defense on the custom should not be given, because of insufficient evidence to support it.

10. ——: ——: Construction Contract: Payment by Railroad. Defendant had a contract with a railroad company for the construction of bridges, and sub-let a part of the work to plaintiff, and pleads as a defense that it was a well understood and established custom that the sub-contractor was not be paid for his work until the contractor was paid by the railroad company, and that, though such custom was not made a part of the contract, it was well understood by him and plaintiff to be a part thereof. Held, that the evidence wholly fails to establish such custom, and defendant cannot escape payment on the ground that the railroad company soon became insolvent and he has been unable to collect from it the money it owes him for the work.

11. DEBT: Insolvency of Railroad. Where the contract between the contractor and the independent contractor, to whom the work of building railroad bridges had been sub-let by a contract which in no wise referred to insolvency or receivership of the railroad, and the work was completed two months before the receiver was appointed, an instruction telling the jury that the independent contractor, in his suit against the contractor for the balance due him, cannot be charged with any loss which the defendant contractor suffered because of the insolvency or receivership of the railroad company, is proper.

12. **BREACH OF CONTRACT: Recoverable Damages.** Damages for breach of contract are only those which are incidental to and directly caused by its breach and may reasonably be supposed to have entered into the contemplation of the parties, and not speculative profits or accidental or consequential losses or the loss of a fancied good bargain.

13. ———: ———: **Unreasonable Delay.** Where the insolvency of the railroad company was not anticipated at the time the work of building railroad bridges was sub-let by the defendant contractor to plaintiff, their contract did not mention the time in which the work was to be completed, and plaintiff did not know that the contract between the company and defendant required the work to be completed within four months, defendant cannot defeat plaintiff's demand by a showing that if the work had been completed sooner he could have collected the money due him for the work before the railroad company went into the hands of receivers; and especially should such be the ruling where there was no unreasonable delay in completing the work, and it was completed two months before the receiver was appointed.

14. **INSTRUCTION: Or for As: Typographical Error.** The use of the word "or" for "as" in an instruction, in such context as to be readily seen to be a typographical error, is not misleading.

15. ———: **Assumption of Fact.** Where it was admitted throughout the trial that a certain sum is due plaintiff, unless because of a defense pleaded no amount at all is due, and said defense is properly disallowed, it is not error to instruct the jury when the amount became due.

16. **REBATES: Railroad Builders' Contract.** A contract with a railroad company whereby the company agrees to refund to the contractor money paid by him for materials and machinery shipped for use in the construction and for the transportation of laborers is not unenforceable, but such rebates are a part of the contract price.

17. **ACCOUNT: Demand of Payment.** To make a demand of payment it is not necessary to use the word "demand" or other formal words of like import. Any intimation to the debtor that payment is desired satisfies the statute and entitles the creditor to interest on his account.

Appeal from Jackson Circuit Court.—*Hon. O. A. Lucas, Judge.*

Affirmed.

*Cooper, Neel & Wright* for plaintiff in error.

(1) Plaintiff's given Instruction 2 is erroneous. (a) It authorizes a finding for the plaintiff, and yet it does not cover the defendant's defenses of waiver and estoppel, both of which were set up in defendant's answer and borne out by the testimony. Hall v. Coal Co., 260 Mo. 367; Thornton v. Mersereau, 168 Mo. App. 9; Beggs v. Shelton, 173 Mo. App. 131. (b) It directs the jury that if they find for the plaintiff and that a certain amount is due, to-wit, $11,835.73, they will add thereto "interest to this date at the rate of 6 per cent per annum from the 26th day of June, 1913, less a credit in the interest of $710.21," etc. There was no testimony of any demand made by the plaintiff from the defendant for payment on June 26, 1913, or theretofore. (c) It directs the jury to credit the payment of $710.21 made on June 26, 1916, "in the interest." This payment was not a payment on interest at all, but it was a payment of the sub-contractor's portion on one of his estimates made by the railroad company and which was turned over to the plaintiff by the defendant as soon as received from the railroad company, which was applied on the principal sum, under the contract, and, of course, if so applied would make a difference on the amount claimed by the plaintiff, making the total amount claimed by him less than if the credit was made on the alleged interest. (d) This instruction is further erroneous in the last line thereof where it refers to the custom pleaded by the defendant and testified to by the witnesses. The instruction tells the jury that its general custom would only be a defense in case said custom was general "and that the parties contracted with the same in view." If there was a general custom in this same kind of business between these parties (and the evidence shows that there was and that it had been generally observed over a period of seventeen years, in their doing business together), as to when the sub-contractor's pay became due, there being nothing in the contract as to when the sub-contractor should receive pay on his estimates, then this general custom as to when he should receive his pay

would govern whether the parties had it in view at the time or not. (2) Plaintiff's given Instruction 3 is erroneous. (a) It is erroneous because it is not based on the evidence. Defendant sought to prove the receivership of the railroad company and was denied the right to do so by objection of plaintiff's counsel. (b) The instruction is erroneous because it is abstract. (c) It is erroneous because it is a comment on the evidence and evidence that was excluded. (d) It is erroneous because it is a positive direction to the jury that the question of receivership of a railroad and the delay of the plaintiff in doing the work "did not constitute a' matter in contemplation of the parties plaintiff and defendant." The instruction does not leave it to the jury to find whether or not it was in the contemplation of the parties plaintiff or defendant, but was a positive direction to them as to what was in the contemplation of the parties at the time. (3) Error was committed in the giving of plaintiff's Instruction 4. This instruction is erroneous because it is too broad. It takes in the whole world. It does not limit the custom in the locality in which the work was done or to any locality. Under this instruction the jury was told that the custom had to be found by them to be general without limitation as to any locality or country. This was error. 12 Cyc. 1040. (4) The court erred in refusing defendant's Instruction 3 in the nature of a demurrer to the evidence. (a) It should have been given because on the face of it and under the testimony the alleged contract is unenforceable for. the reason that it provides that a rebate from the railroad company shall be procured both on freight charges and on railroad fares. Plaintiff admitted he received the refund. This was an unlawful act. Foster Lumber Co. v. Ry. Co., 270 Mo. 643. This being an unlawful act, the entire contract is tainted and is void, hence the demurrer to the evidence should have been sustained. (b) There was no testimony of any demand of payment. (c) Because the plaintiff conceded in his evidence the custom pleaded by the defendant that his money was not due from the defendant until paid by the railroad com-

pany, and, therefore, the suit was prematurely brought. (d) Furthermore, under the admissions of the plaintiff he waives any payment due him until his estimates had been paid by the railroad company, and under his admissions he was estopped from asserting his claim against defendant at the time of bringing this suit. (5) The court erred in refusing to give defendant's Instruction 8. It presented the defense set up by the defendant that if the plaintiff had acquiesced, either specifically or by his course of dealing, acts and conduct, in looking to the railroad company for any money due him on the contract sued on and not to press a claim against the defendant until the defendant had collected from the railroad company, then their verdict would be for the defendant. This proposition was covered by the pleadings and the testimony and should have been given. (6) The court erred in not sustaining the motion for a new trial because the verdict of the jury was contrary to the evidence introduced in the case and is against the greater weight of the evidence: (a) The plaintiff admitted the custom pleaded in defense of this case. (b) The president of the defendant, testified as to this custom. (c) The course of dealing of the parties all along showed that they complied with this custom. (d) The plaintiff never made any effort to get his money from the defendant, knowing that it had not been paid by the railroad company, until after the railroad company went into the hands of a receiver and until after legal proceedings in an effort to get an equitable lien established against the railroad company prior to the bondholders had failed.

*Haff, Meservey, German & Michaels* for defendant in error.

(1) There was no error in plaintiff's given Instruction 2. Riney v. Hill, 14 Mo. 500; Sutton v. Libby, 201 S. W. 618; Berclid Realty Co. v. Obear, 191 S. W. 1070; Allen v. Forschler, 189 S. W. 636; Railroad v. Second St. Imp. Co., 256 Mo. 406. (2) There was no

error in plaintiff's given Instruction 3. Implement Co. v. Machine Co., 268 Mo. 371; Friend v. Miller, 67 Cal. 464, 8 Pac. 40; Turner v. Gibbs, 50 Mo. 556; Schaeffer Mfg. Co. v. Natl. F. E. Co., 148 Fed. 159; Lefkowitz v. Bank, 152 Ala. 521; Bridge Co. v. Stewart, 134 Mo. App. 618; Fisher v. Edgefield, 62 S. W. (Tenn.) 27. (3) There was no error in plaintiff's given Instruction 4. Kearse v. Seyb, 209 S. W. 635; Staroske v. Publishing Co., 235 Mo. 67; Manzke v. Goldenberg, 149 Mo. App. 12. (4) The court did not err in giving plaintiff's Instruction 6. Breen v. United Rys. Co., 204 S. W. 523; Powell v. Railroad, 255 Mo. 453. (5) The court did not err in refusing to give defendant's Instruction 3. Conference Rulings, Interstate Commerce Comm., Bulletin No. 7, issued August 17, 1917, p. 57; Howell v. Jacks, 262 Mo. 403; Ice Co. v. Kuhlman, 238 Mo. 705; Railroad v. Iron Works Co., 117 Mo. App. 167. (6) Under the evidence plaintiff was entitled to a directed verdict. Porterfield v. Am. Surety Co., 210 S. W. 119; Garrett v. Limes, 209 S. W. 295; Wolff v. Campbell, 110 Mo. 114; Kimball v. Brawner, 47 Mo. 399; Kelley v. Meyer, 74 Mo. App. 330; Planters Oil Co. v. Gresham, 202 S. W. 148; State ex rel. v. Pub. Serv. Com., 269 Mo. 75; Greenleaf on Evidence, sec. 277; Mfg. Co. v. Jaeger, 81 Mo. App. 242; Meeker v. Klemm, 11 La. Ann. 104; Godkin v. Monahan, 83 Fed. 116; 2 Elliott on Contracts, secs. 1679 and 1620; Trustees v. Hoffman, 95 Mo. App. 488; Montgomery v. Schwald, 177 Mo. App. 83; Williams v. Ry., 85 Mo. App. 108; Smith v. Kemp, 92 Mich. 357; Stein v. Fogarty, 4 Idaho, 702, 43 Pac. 681; Conner v. Clark, 12 Cal. 168; Gorrell v. Ins. Co., 63 Fed. 371; Burke v. Miller, 187 S. W. 141; Mumford v. Tolman, 157 Ill. 258; Stull v. Thompson, 154 Pa. St. 43; Beherel v. Myers, 240 Mo. 58; Sunderland v. Mfg. Co., 192 Mo. App. 287; Cameron Coal Co. v. Block, 110 Pac. (Okla.) 720.

WALKER, C. J.—This is a suit on a contract for construction work on, a railroad instituted in the Circuit Court of Jackson County by Baker against the McMurry Contracting Company. Upon a trial at the May term, 1917, of said court a judgment was rendered in favor of the plaintiff. Under a writ of error the de-fendant seeks a review of this judgment.

The contract upon which this action is based was in the form of a letter addressed by the defendant to the plaintiff and accepted by the latter. The subject-matter of this contract is as follows:

"Agreeable with our conversation this morning, we herewith make you the following proposition on work to be done on the N. O. T. & M. R. R. east of Houston, Texas. Repairing pier No. 2 at the San Jacinto River bridge, building piers and abutments at Barnes Creek, Cowpen Creek, Hickory Creek and Anchorage, La., at the following unit prices:

(Omitted as not in issue.)

"It is understood that you are to furnish all ma-terial and all labor necessary to complete this work, and that the railroad company will refund freight charges and railroad fares paid on laborers on the N. O. T. & M. R. R. It is understood that they will also pay for extra labor performed at San Jacinto River; such as removing old cofferdam, and preparing the pier and footing courses for new concrete, at cost plus 10 per cent. It is further understood that we are to fur-nish two hoisting engines, two derricks, complete with wire rigging, one concrete mixer, one centrifugal pump, one force pump, pile driver hammer, and one stationary 30-horse-power boiler free of charge to you, except that you are to pay the freight on this plant from Van Buren, Ark., to Quincy or Beaumont, which are the connections with the N. O. T. & M. R. R. All of the above described work to be done under the direction and according to the plans furnished by the chief engineer of the N. O. T. & M. R. R. Co."

The material averments necessary to charge a liability on this contract are embodied in the petition, concerning the sufficiency of which there is no controversy. The material averments of the answer are as follows:

That the railroad company under which defendant was a general contractor, and plaintiff a sub-contractor under defendant, had become insolvent; that under the laws of Louisiana, where the work was being done, there could be no statutory lien for the work done; that defendant had taken all possible steps to establish an equitable lien, but unsuccessfully; that the plaintiff had joined defendant in these efforts; that a general custom existed and was in force in the railroad contracting business, in which both the parties were engaged, and of which both had notice and knowledge at the time of the making of any contracts, that if, by reason of insolvency or otherwise, the railroad company delayed or was unable, in whole or in part, to pay promptly for work and labor done and materials furnished by a sub-contractor, the claim of the sub-contractor would not be enforced against the original contractor and did not become due and payable unless and until the railroad company paid therefor, and that the sub-contractor must and does look to the railroad company for payment direct or through the original contractor; that the plaintiff, by his course of dealing, acts and conduct, waived payment of any amount coming to him until and unless same was collected from the railroad company, and that he is estopped from collecting any amount from defendant unless and until same is collected from said company; that the work in question was done under an original contract between the defendant in the case at bar and the railroad company, which provided that the work must be completed by December 3, 1912; that plaintiff had full notice and knowledge thereof and that the contract with him was entered into subject to such requirement; that the plaintiff delayed the work in violation of his contract

for a long time, to-wit, five months, and that all work so paid for mentioned in the petition was done after the date said work should have been completed, and that if plaintiff had promptly performed his contract payment therefor would have been made by the railroad company, as it was then operating the property and supplied the funds to pay therefor, and that plaintiff's delay and breach prevented the payment for the work, resulting in great damage to the defendant.''

Plaintiff's reply was a general denial.

The testimony for the plaintiff was that he had performed the work required by the contract and that there was due him therefor $11,125.54.

McMurry, defendant's president, testified that he went over the work with plaintiff and that the latter reported to him that it could be completed in about four months; that McMurry on behalf of the defendant company then entered into a contract to perform the work with the railroad company within the time stated by plaintiff, and sub-let the same to the plaintiff as per the contract heretofore set forth.

The defendant then offered to prove, and the court excluded the testimony, that the railroad company went into the hands of a receiver and that up to that time it paid its estimates for the work promptly. Defendant's president further testified that there was a custom in railroad construction work that when it was done by a sub-contractor he was not paid therefor until his estimates were received by the railroad company and payment had been made by it to the general contractor; that if for any reason a railroad company delays or does not pay the general contractor on the sub-contractor's estimates the money for the work performed is not due the latter until the railroad company has paid the general contractor; that this custom existed at the time the work was done and was acquiesced in by the parties; that the plaintiff had performed sub-contractor work for the president of the defendant company for many years prior thereto and that this method

of payment had prevailed during that time. Defendant further offered to show, and the testimony was excluded, that on each payment by the railroad company on the estimates of the sub-contractor the full amount, less the difference in the general and the sub-contractor's price, was paid over to the plaintiff.

On cross-examination defendant's president testified that the custom he had referred to applied where the railroad work was done under an agreement, and that this particular work was an isolated case, and that as the plaintiff was on the ground he assumed all the risk of the work.

Plaintiff in rebuttal denied that there was any such custom as had been testified to by the defendant's president. As to the general course of dealing between these parties it was testified to by the plaintiff, as it had been by the defendant's president, that the question as to the right to the sub-contractor's payments being deferred until the railroad company had settled with the general contractor had never come up between them; that for about seventeen years plaintiff had been contracting with the defendant and had been paid promptly at the time of the delivery of the monthly estimates with one exception, in which the payment had been made to him before the estimate came in. There was introduced in evidence a letter written by the defendant to the plaintiff during the progress of this work, the substance of which is as follows: "We have not yet received voucher from the railroad company covering the February estimate, but if you are in need of funds to pay local bills when you have finished work at Barnes Creek, please let us know and will mail you a check."

There was no evidence tending to prove an estoppel or waiver on the part of the plaintiff. His having waited three years before bringing suit was explained by the fact that he was closely related to the president of the defendant company and that his delay was due to social and not business reasons. But there was no evidence of any agreement on the part of the plaintiff that he would

wait at any time for his money; nor was it shown that the defendant was in any way induced to change its position or that it was injuriously affected by reason of the delay. There was sufficient testimony to satisfy the conclusion that the delay occasioned in the performance of the work was not due to the plaintiff, nor was there any evidence of complaint on the part of the railroad company on this account. Upon this testimony the jury returned a verdict for plaintiff in the sum of $13,795.6 ·, the amount of plaintiff's claim and interest.

I. The ruling of the trial court was assigned as error in excluding the testimony offered by the defendant to show that before the written contract was entered into plaintiff went down and examined the work; that after he examined it he reported to the president of the defendant company that it would take approximately four months to perform it; that relying upon this information the defendant specified in its contract with the railroad company the time suggested by the plaintiff, but omitted this limitation from its contract with the latter. The statement of the plaintiff prior to the execution of the contract as to the time required to complete the work can be considered as nothing more than an expression of opinion. It is elementary that the contract is to be measured by its terms. [Robinson v. Korns, 250 Mo. 663; Feren v. Epperson Inv. Co., 196 S. W. 435; Beheret v. Myers, 240 Mo. 58.] In the absence of ambiguity, evidence of preliminary conversations and negotiations are not admissible. [Griffin v. Miller, 188 Mo. 327; New York Life Insurance Co. v. Wolfson, 124 Mo. App. 286.] If plaintiff's statement as to the time of performance had been other than an expression of opinion it would have been superseded by the written instrument, which is subject to the rule as to a reasonable time rather than a specified period. [McCall v. Atchley, 256 Mo. 39; Tuggles v. Callison, 143 Mo. l. c. 536; Chunn v. O'Neil Lumber Co., 175 Mo. App. 641.] The foregoing rules of construction apply to the contract entered into

*Testimony.*

between the plaintiff and the defendant. If it be contended that the contract between the railroad company and the defendant limits the time within which the contract between the plaintiff and the defendant was to be performed, then it will be sufficient to say that the extended time of performance subsequently agreed to by plaintiff and defendant was acquiesced in by the railroad company. It cannot be maintained, therefore, that the defendant suffered any injury by reason of the failure of the plaintiff to complete the work within the time specified with the railroad company and hence there exists no just ground of complaint on this account.

It does appear that the railroad company's insolvency and consequent inability to pay the defendant the balance due for the work did not occur until after the expiration of the time limited in its contract with the defendant. The defendant interposes this fact as a reason why it should not be held liable to the plaintiff for the amount due by it to the latter. The plaintiff, however, while designated as a sub-contractor, was, within the meaning of the law, an independent contractor and his right was not dependent upon the performance by the railroad company of its contract with the defendant. Where a contractor sub-lets a contract and there is, as here, no contractual relation between the railroad company and the sub-contractor, the latter cannot pass by the contractor, his immediate employer, and sue the railroad company for an amount due him on the contract. [Lake Erie Ry. Co. v. Eckler, 13 Ind. 67; Richmond R. C. v. Harris, 32 S. W. 458; Marks v. Ry. Co., 38 Ind. 440; Ind. etc. Ry. Co. v. O'Reily, 38 Ind. 140; 33 Cyc. pp. 341, 349 and notes.] This is true despite the fact that the work was done under the direction and in accordance with plans furnished by the chief engineer of the railroad company. [Gayle v. Mo. Car & F. Co., 177 Mo. 427; Blumb v. City of Kansas, 84 Mo. 112; McKinley v. Railroad, 40 Mo. App. l. c. 457.]

In short, plaintiff's contract, being independent ard unambiguous, should be construed according to its own terms; and defendant cannot escape liability for any obligation therein made on account of the failure of the railroad company to comply with its contract. This being true, the court's refusal to permit defendant's counsel to question plaintiff as to the difference between what defendant received from the railroad company and the amount of defendant's contract with the plaintiff was not error. Plaintiff testified that he never saw the contract between the defendant and the railroad company, nor the estimates furnished by the defendant to the company, and did not know whether the defendant had been paid by the railroad company. If it be conceded, however, that plaintiff knew all of these facts, which the jury found he did not know, the defendant's liability to him would not be affected by such knowledge. The testimony excluded, therefore, was wholly immaterial. Whatever the estimates were, it was conceded that plaintiff had received from the defendant his money for labor done on all of same except those which represented the amount in controversy. It was to this amount, therefore, which the trial court restricted the testimony and its ruling was not improper.

A further and all-sufficient reason, as disclosed by a more careful reading of the transcript, why the exclusion of the testimony complained of should not affect the judgment is that the material portions of same were subsequently admitted in evidence.

A like reason disposes of the objection to the court's ruling in regard to the cross-examination of the plaintiff.

The immateriality of the evidence as to the railroad company's insolvency is evident. A discussion of this phase of the testimony is therefore unnecessary.

II. Instruction numbered two, given at the request of the plaintiff, is complained of. It is as follows:

"The jury are instructed that the contract dated September 5, 1912, read in evidence, is admitted. If there-

fore, you find and believe that plaintiff did work repairing and building certain bridge piers along the line of New Orleans, Texas & Mexico Railroad Company, for defendant, under and in pursuance of said contract; that such work was done under the direction of defendant and the chief engineer of the New Orleans, Texas & Mexico Railroad Company; that thereafter as the work progressed from month to month, defendant furnished plaintiff with monthly estimates showing the amount due from defendant to plaintiff for the work of each preceding monh until after the end of May, 1913, when defendant furnished plaintiff with a final estimate, and that plaintiff and defendant agreed upon $11,835.73 as the amount due from defendant to plaintiff, and that on or before June 26, 1916, plaintiff demanded the amount due from defendant but that no payments have been made except the sum of $710.21 conceded by plaintiff to have been paid on June 26, 1916, then your verdict will be for plaintiff and you will fix plaintiff's damages at the sum of $11,835.73, to which you will add interest to this date at the rate of six per cent per annum from the 26th day of June, 1913, less a credit in the interest of $710.21 paid June 26, 1916, unless you further find that in making the contract there existed a genera¹ custom, that the sub-contractor was to wait for his money until the original contractor received his, and that such custom, if any, was general and that the parties contracted with the same in view."

*Custom. Instructions: Waiver.*

Defendant's specific objections to this instruction are: (1) that it does not cover the defenses of waiver and estoppel; (2) that it states, in the absence of evidence, that there was a demand made by plaintiff of defendant for the amount claimed to be due on June 26, 1913; (3) that the credit of $710.21 was not interest as stated in said instruction; (4) that the reference in the instruction to the general custom contended by defendant to apply in this case, was erroneous.

We will consider these assignments in the order in which we have enumerated them: (1) There was no

evidence of either waiver or estoppel. [Langdon v. Kleeman, 278 Mo. 1. c. 242.] (2) Plaintiff testified that he made a demand of defendant for the payment of the amount due him "some time around June 26, 1913." (3) The rule as to the manner in which interest should be calculated has frequently been judicially declared to be as follows: "Interest is first to be calculated on a plaintiff's demand up to the first partial payment, then add the interest to the principal and deduct the payment therefrom, then cast interest on the remainder to the second payment, add the interest to the said remainder and deduct therefrom the second payment; and so on until the last partial payment, unless, in any case, the interest up to any payment shall exceed the payment, in which case, such payment is to be deducted from the interest, and the excess of the interest is to be carried forward, without casting interest thereon, to the next payment that will discharge said excess." [State ex rel. Christy v. Donegan, 94 Mo. 66, 6 S. W. 693; James v. Hiatt, 80 Mo. App. 43; Call v. Moll, 89 Mo. App. 386; Sutton v. Libby, 201 S. W. 615; Riney v. Hill, 14 Mo. 500, 55 Am. Dec. 119.] While the instruction did not follow the language of this rule, the method pursued in determining the amount due enabled a like result to be reached, the difference in amount being less, as shown by the verdict, than if the rule had been literally complied with. Under such circumstances it is not material that the payment of $710.21 was designated as interest. The amount due plaintiff upon a compliance with the rule would have been $13,796.33. The amount of the verdict was for $13,795.64. The difference is trivial, as is the objection made thereto. In harmony with our conclusion in this regard, the St. Louis Court of Appeals, in Sutton v. Libby, supra, holds that "where the court instructs erroneously as to the calculation of interest, but the result arrived at by the jury is the same as would have been attained had the jury computed interest under the proper rule, the error is harmless."

*Interest.*

(4)   That part of the instruction referring to a general custom was framed with references to the defendant's pleading and contention in regard thereto and was the converse of defendant's instruction numbered one, which was given at its request. This complaint, therefore, should not be heeded. Although this part of the instruction was more favorable than otherwise to defendant and therefore not error, it should not have been given, as there was no sufficient testimony to sustain it. [Joseph v. Andrews Co., 72 Mo. App. l. c. 555.]   A custom to be binding must, among other requisites, be shown to be certain, uniform, general and of long existence. [Staroske v. Pub. Co., 235 Mo. l. c. 75; Ehrlich v. Ætna Life, 103 Mo. 231; Freight & Cotton Press Co. v. Standard, 44 Mo. 71; Johnston v. Parrott, 92 Mo. App. 199.]   The only testimony in regard thereto was that of the president of the defendant company, and while his statements are general, it is evident from his answers that his knowledge was confined largely to transactions in which his company had been interested. This will not suffice to establish the custom. [Am. Ins. Co. v. Nieberger, 74 Mo. 167.]   In addition, he is contradicted by the plaintiff and there was no other testimony. The strict rule under such circumstances is that a general custom cannot be established by one witness where his testimony is contradicted and the other party swears he has no knowledge of the custom—one should not be bound by a fact of which he was ignorant and which it was not his duty to ascertain. [Kirchner v. Venus, 12 Moore P. C. 399.] But if we apply the more liberal rule that if testimony which fairly and reasonably establishes a custom is contradicted then its existence becomes a question of fact for the jury. [Milroy v. Chicago Railway Co., 98 Iowa, 195.]   Thus submitted the jury found against the defendant.

There was no error in the giving of plaintiff's instruction numbered three. It told the jury that plaintiff could not be charged with any loss which defendant

*Custom.*

Insolvency.    might have suffered because of the insolvency or receivership of the railroad company. The correspondence between plaintiff and defendant introduced by the defendant, furnished the basis for this instruction. These letters repeatedly referred to the insolvency and receivership, and in a letter written by defendant's president to plaintiff is the following:

"I want to also call your attention to this fact—that had you completed this work on time or anything near on time, which was December 31, 1912, this matter would have been closed several months prior to receivership," etc.

The record discloses that defendant's counsel in the presence of the jury repeatedly made offers to show the receivership and asked an instruction which was the converse of that given at plaintiff's request. The instruction was properly given and correctly stated the law. The receivership of the railroad company was not referred to in the contract and could not have been anticipated. In plaintiff's offer of proof it appears that it did not occur until July, 1913, or two months after plaintiff's work was completed. The damages for breach of contract are only those which are incidental to and directly caused by the breach and may reasonably be supposed to have entered into the contemplation of the parties, and not speculative profits or accidental or consequential losses or the loss of a fancied good bargain. [Implement Co. v. Harvesting Machine Co., 268 Mo. l. c. 371; Friend v. Miller, 67 Cal. 464, 8 Pac. 40; Turner v. Gibbs, 50 Mo. 556; Schaeffer Mfg. Co. v. National Fire Extg. Co., 148 Fed. 159; Lefkovits v. First National Bank, 44 So. 613, 152 Ala. 521.]

In the California case above cited the defendant sought to defeat an action on a contract for furnishing defendant with certain piles. It was attempted to be shown that by reason of plaintiff's delay in furnishing the piles, defendant was prevented from completing the contract under which they were to be used, for so long

a time that he failed to realize the money on another contract of defendant with certain drainage commissioners. This defense was not allowed, the court in refusing it using the following language, at page 468:

"He sought but was prevented from proving the loss he sustained by failure to collect the money due him from the State. The failure of plaintiff to deliver the piles in time was a *remote* not a *proximate* cause of defendant's failure to receive compensation on his contract. It is said the drainage act, under which defendant was a contractor, was declared unconstitutional. Whether defendant failed from this cause, or because the fund from which he was to be paid was exhausted, or from any other like cause, to receive payment from the State, seems to us unimportant. This is not a loss which, in the ordinary course of things, would be likely to result from a failure to deliver under the contract. It was damages which could not well have been contemplated by the parties when they entered into the contract. The failure of defendant to secure compensation from the State was a result brought about by the interposition of other agencies, dependent upon independent causes, over which plaintiff and defendant had no control, and could not have contemplated." [Friend v. Miller, supra.]

Furthermore there was no evidence of unreasonable delay. The contract did not require the work to be done on December 31, 1912, or at any other specified time. The evidence was that plaintiff never saw defendant's contract with the railroad company, did not know that any time limit was fixed in it until long after the work was commenced and that it was completed as soon as it could be done by the exercise of reasonable diligence. There was evidence in addition that plaintiff was delayed by rains and high water, and by failure of the railroad company to secure the permission of the war department to make excavation. Further than this, some of the plans were not furnished to plaintiff until February, 1913.

The evidence fails, therefore, to show any unreasonable or unnecessary delay on the part of plaintiff. Had

there been a time limit in the contract it was waived by the parties. [Bridge & Iron Co. v. Stewart, 134 Mo. App. 618; Fisher v. Edgefield Mfg. Co., 62 S. W. 27.]

The giving of plaintiff's instruction numbered four is assigned as error. It is as follows:

"That in order to form a part of a contract, a custom must be shown to be general or universal, certain, settled and uniform, and both parties must have had knowledge thereof at the time of the making of the contract or such custom must have been so universally known and understood, or that both parties must have been presumed to have knowledge of it. And unless you believe that such a universal custom existed at the time this contract was entered into it connot be considered by you as a part of the contract."

Custom.

While, in our opinion, there was no sufficient evidence of a custom, there was testimony by defendant's president of its existence and upon this testimony the instruction complained of was given, as well as defendant's instruction numbered one, which submitted the converse of the same proposition. Plaintiff's instruction, therefore, if it properly declared the rule as to the existence of a custom, preventing as it did defendant's theory of the case, was more favorable to the latter than otherwise and hence furnished no ground of complaint. The insertion of the word "or" in the latter part of the first sentence of the instruction between the words "understood" and "that" is, even to the casual reader, an evident typographical error. Inserted, the word renders the phrase following it without meaning; omitted, it correctly declares the law. The conclusion, therefore, is reasonable that the jury, understanding the ordinary meaning of English, were not misled. If not misled, the defendant suffered no injury and his objection is futile.

Plaintiff's instruction numbered five, defining what constituted "a reasonable time" to perform the work, was not error. There was no evidence tending to prove that there was any unreasonable delay, and while the in-

struction was probably unnecessary, in view of the fact
that defendant had throughout the trial claimed that
plaintiff's delay had occasioned whatever loss had oc-
curred, the instruction was not improper. The letters in-
troduced by defendant alone constituted such evidence
as to authorize the conclusion that the delay that had
occurred in the completion of the work was not due to
plaintiff.

D'efendant complains that instruction numbered six
was erroneous because "one of the principal points at
issue was when the payment or payments *became due*
from the defendant to the plaintiff; that the language
of this instruction is a postive direction to the
Amount Due.
Instruction: jury that the $11.835.73 is conceded to be due
at the end of the work." In considering this
instruction it must be borne in mind that the time when
the payments became due was *the* point at issue in the
case. Throughout the trial it was admitted that the
$11,835.73 was the balance owing from defendant to
plaintiff. unless by the alleged custom it did not become
due until after defendant collected its money from the
railroad company, so that the instruction telling the
jury how to make up their verdict if they should find for
plaintiff was not erroneous as assuming that the indebt-
edness was due at the end of the work. [Breen v.
United Railways, 204 S. W. 1. c. 523; Powell v. Rail-
road, 255 Mo. 1. c. 453.] In the latter case, LAMM, J.,
in referring to a similar instruction, uses this language:

"It is argued that the first instruction assumes the
injuries caused the death of Frederick. We may be
pardoned for not agreeing with counsel. It says, 'If
you find for plaintiff, then,' etc., and makes no assump-
tion at all. It is only an instruction on the measure
of damages in the contingency and on the hypothesis
the jury first find for plaintiff. The elements to be consid-
ered by the jury in making this finding for plaintiff, if
they do, are not dealt with at all by the instruction, and
are not usually dealt with in one on the mere measure of

282 Mo.—45

damages, filling no office in instructing on the whole case.

"Furthermore, and most of all, defendant below stood mute and asked no instruction on the measure of damages. It pitched its battle at other points. It exhausted its solicitude elsewhere and on other questions. It may not now, with its corporate heart bowed down with the woe of defeat, and its corporate eyes washed and brightened by the tears of affliction, elicit appellate interest in a matter it cared nothing about below." To a like effect is Breen v. United Railways, supra.

The court did not err in refusing defendant's instruction numbered three in the nature of a demurrer to the evidence. Defendant contends that the contract between plaintiff and defendant is unenforceable in that it provides for a rebate from the railroad company on freight charges and railroad fares. It is true that in this contract the defendant agrees that the railroad company shall refund to plaintiff freight charges and railroad fares paid on laborers engaged in the work. This act is not unlawful; the amount paid for the freight charges for materials used in the construction work and for the fares of laborers, is regarded as a part of the contract price of the work. This proviso does not come within either the letter or the spirit of the statutes prohibiting unfair discrimination or rebates. As strongly persuasive of the correctness of this conclusion, the Interstate Commerce Commission has frequently ruled on this question as follows:

Rebates.

"Nor does the Commission construe the law as preventing a carrier from giving free or reduced-rate carriage over its line to contractors for material, supplies, and men for use in construction, improvement, or renewal work on the line of that carrier, provided such arrangements for free or reduced-rate carriage are made a part of the specifications upon which the contract is based and of the contract itself." [Rulings 386 and 413; and Railroad-Telegraph Contracts, 12 I. C. C. 11. Also Conference Rulings, Bulletin No. 7, August 17, 1917, p. 57.]

Foster Lumber Co. v. Railroad, 270 Mo. l. c. 643, cited by defendant is not in point. It applies to a stipulation between a shipper and the railroad company by which the shipper received an advantage not received by others. In this particular case the amount rebated was money expended for the use and benefit of the railroad company itself.

Again, the plaintiff is not suing for any part of the amount alleged to have been rebated. That is not in controversy and is not involved in the issue. This point was not suggested in the trial below and it cannot be considered here. [Howell v. Jackson County, 262 Mo. 403; Ice & Cold Storage Co. v. Kuhlmann, 238 Mo. l. c. 705.]

Defendant further contends that there was no testimony of any demand of payment. The evidence shows that when the work was completed defendant furnished plaintiff with a written credit memorandum of the amount due; that plaintiff, in the latter part of June or the first of July, demanded his money from the defendant after the final estimate was in; that he had previously asked the defendant's president for his money for the monthly estimates when they became due. Defendant testified that plaintiff asked him for his money about a year before the day that defendant testified, and as he was testifying on June 26, 1917, this would make the demand, according to his testimony, about June 26, 1916. Throughout the correspondence between the parties appear repeated urgings on the part of plaintiff that defendant pay the money. To make a demand of payment it is not necessary to use the word "demand" or other formal words of like import; any intimation to the debtor that payment is desired satisfies the statute and entitles the creditor to interest on his account. [Babbitt v. Railroad, 149 Mo. App. 439; Railroad v. Iron Works Co., 117 Mo. App. l. c. 167; Vandolah v. McKee, 99 Mo. App. 342.]

**Demand.**

Defendant claims that plaintiff conceded the evidence of the custom, and refers to a question appearing

in the record, where defendant's counsel succeeded in getting a momentary admission of that character. The question was: "And that has been the habit and custom during these seventeen years that you have been in- this railroad business, that your claim did not become due from the original contractor until the railroad company paid, then your money was due, and you always got it, haven't you? A. Yes, sir."

*Conceded Custom.*

We are inclined, upon a review of all of the testimony, to adopt the construction placed upon this question and answer by counsel for plaintiff, that in answering this complicated inquiry, involving three separate questions in one, the plaintiff answered only the last part of the same, and intended to say that he had always gotten his money. This is clear from reading the previous examination; but immediately following this question, when interrogated by his own counsel, plaintiff corrected his answer as follows:

"Q. Did you understand that your money was not due until he got his money from the railroad company? A. No, sir.

"Q. What you meant to say was, he has gotten the money and has paid you within a reasonable time? A. Yes, sir.

"Q. There has been no discussion of the matter between you and him before this? A. No, sir."

As repeatedly stated, there is no evidence of any waiver of the payment due him, except that plaintiff waited under protest for three years after his debt became due, on account, he says, of not desiring to disturb the close relationship by marriage between him and the president of the company. A reasonable construction of the testimony introduced on behalf of the defendant lends no support to the theory that the plaintiff at any time assumed the attitude of forgiving the debt or that he did anything which precluded his right of recovery.

Defendant claims that the giving of its instruction numbered four, refused by the court, was essential to its complete defense of plaintiff's claim. This instruction but reiterates the doctrine upon which defendant bases its defense, viz., that its contract with the plaintiff should be held to be dependent upon and construed according to the terms of the contract with the railroad company. We have discussed this question fully, as well as the propriety of the trial court's action in refusing defendant's instructions, among others that numbered eight, in regard to waiver and estoppel, and having ruled adversely to the defendant, words need not be wasted in repeating the reasons for our conclusion.

The defenses interposed herein are purely technical. While evidencing the industry and legal ingenuity of counsel, they are without substantial merit, and no hurtful error having occurred below, the judgment should be affirmed. It is so ordered. All concur.