# VAN HORN v. ST. LOUIS TRANSIT COMPANY, Appellant.

### Division Two, July 3, 1906.

1. **STREET CAR: Security of Passengers: Conductor's Duty.** It is the duty of the conductor of an open street car to see that a passenger has a seat reasonably safe and secure; and where he knows her position to be unsafe, or the circumstances are such as to make his knowledge inferable, it is his duty to control the running of the car with a degree of care proportionate to the danger to which the passenger, by reason of her insecure position, is exposed.

Van Horn v. St. Louis Transit Co.

2. ——: ——: ——: **Open Car: Demurrer.** The evidence upon the part of plaintiff tended to show that, owing to the crowded condition of the car in which plaintiff's wife was a passenger, she was compelled to occupy a position at the end of a seat of an open car next to the foot-board, which the conductor must have known was unsafe, in that she had to sit upon the end of the seat in front of the upright stanchion and in front of the side support of the seat; that the car was being run 20 or 25 miles an hour; that her hat blew off, and that in reaching out suddenly to the left to recover it, she either fell off or was thrown off. Defendant's testimony was that when her hat blew off she got down on the foot-board while the car was running and jumped off. *Held,* that the court properly overruled a demurrer to the evidence.

3. ——: ——: **Reckless Speed: Allegation: No Proof.** If the seat on the street car which the passenger occupied at the time of the accident was unsafe and insecure, owing to her exposed position near its end, the conductor will be presumed to know it; and it will not be held that there can be no recovery for her injuries because the evidence does not sustain the charge that the car at the time was being run at a reckless rate of speed. When the primary cause of the accident was the insecure and dangerous position the passenger occupied on the car, when considered in connection with the swaying of the car while running at the rate of twenty miles an hour, or at the ordinary rate, it makes no difference whether the petition charges reckless speed or whether or not there is evidence to sustain that charge.

4. ——: ——: **Voluntarily Leaving Car: Proximate Cause.** Notwithstanding the car was crowded and the conductor was negligent in not providing the passenger a safe and secure position on the car, yet if the passenger voluntarily left the car while it was in motion, and in consequence she was injured she was guilty of contributory negligence, and there can be no recovery. And an instruction presenting this clear defense should not be modified by the addition of a clause, "Unless said crowded condition of the car, or the rapid speed, or the rocking motion, was the proximate cause of her injury," etc.

Appeal from Gasconade Circuit Court.—*Hon. Wm. A. Davidson,* Judge.

REVERSED AND REMANDED.

*Geo. T. Priest* for appellant; *Boyle & Priest* and *George W. Easley* of counsel.

(1) The court erred in overruling defendant's demurrer, offered at the close of the plaintiff's evidence and renewed again at the close of all the evidence. When a petition charges negligence specifically, the acts, or some one of them, constituting the charge of negligence, must be proven, and, unless proven, the verdict for the plaintiff cannot stand, even though the petition be founded on the relation of carrier and passenger. Waldhier v. Railroad, 71 Mo. 514; Price v. Railroad, 71 Mo. 414; Ely v. Railroad, 77 Mo. 34; Current v. Railroad, 86 Mo. 66; Feary v. Railroad, 162 Mo. 75; Allen v. Railroad, 183 Mo. 411; McManamee v. Railroad, 135 Mo. 440. (2) The court erred in amending defendant's instruction 5 offered, and in giving the instruction in its amended form to the jury. The error committed in amending this instruction destroyed absolutely any defense that defendant could have, and the defense it did have.

*A. R. Taylor* for respondent.

(1) Appellant contended that, as respondent has specified the grounds of negligence of the carrier relied upon, he must be held to prove them without presumption. This is not precisely the law. If an injured passenger specifies negligence, and his proof shows different negligence, it has been held that he may not recover; whereas, if he alleges simply an injury by the giving away of the vehicle of the carrier, he makes a prima-facie case without more, and casts the burden of explanation on the carrier to show that the giving away of the vehicle, and injury thereby caused, was without the slightest negligence on its part. This principle does not touch or have application here. Every averment of negligent acts, contributing to this death,

had substantial evidence to support it. If the two large men, occupying too much of the south end of the seat, so that deceased could not get secure sitting-room on the seat, needed looking after, the conductor should have attended to this matter. It was his duty to see that this lady had a seat reasonably safe and secure. He saw the situation, and he took her as a passenger on said seat, in the exposed position, and he, being the direct representative of the carrier, was bound in duty to control the running of the car with that high degree of care which the exposed position of deceased demanded. This is settled law. Willmott v. Railroad, 106 Mo. 543; Seymour v. Railroad, 114 Mo. 271; Luckel v. Century Co., 177 Mo. 628; Sweeny v. Railroad, 150 Mo. 397; Parks v. Railroad, 178 Mo. 116; Becker v. Lincoln Co., 174 Mo. 250; O'Brien v. Railroad, 185 Mo. 268. (2) The claim of appellant is that the court modified his fifth instruction and gave it. The court gave two instructions at the request of the defendant, each telling the jury that if the deceased ''voluntarily got off the car while it was in motion, then her own conduct was the direct cause of her death and plaintiff cannot recover.'' The court gave in two instructions the same law asked in instruction 5 modified by the court and given. The court would have properly refused the instruction, because to give a multitude of instructions embodying the same law tends to mystify rather than enlighten a jury. The instruction in itself is harmless and only presents both sides of the issue, in effect telling the jury that if defendant's predicate is true plaintiff cannot recover, but that if plaintiff's predicate is true—it would be different. We presume that the court, after giving the same propositions for defendant in instructions three and four, as cited above, concluded that it was as well that the jury should not lose sight entirely of plaintiff's side of the case. So that upon this complaint of appellant the record shows he had at least two instruc-

tions submitting the exact question for his side asked in the fifth. He had no right to more than one. He wanted three. Counsel contends that the "unless clause" destroys his "although clause." The court would have been entirely justified in refusing the instruction bodily, because a repetition of two already given, and if this is true, he distinctly got more of the instruction than he was entitled to. Where the substance of a requested instruction has already been given, it is not error to decline to repeat such instruction, although in another form. Maxwell v. Railroad, 85 Mo. 105; State v. Thornhill, 177 Mo. 695; State v. Brown, 181 Mo. 220.

BURGESS, P. J.—This is an action for five thousand dollars as damages for the death of plaintiff's wife, caused through the alleged negligence of defendant's servants whilst operating one of defendant's cars in which the deceased was a passenger.

The cause was tried before the court and jury, and a verdict and judgment rendered in favor of plaintiff for the sum of five thousand dollars. After unavailing motions for new trial and in arrest of judgment, defendant appeals.

The petition, omitting the formal parts, is as follows:

"The plaintiff states that the defendant is, and at the times herein mentioned was, a corporation by virtue of the law of Missouri, and used and operated the railway and car herein mentioned as a carrier of passengers for hire. That on the 18th day of May, 1901, the defendant, by its servants in charge of its west-bound car at Hamilton and Delmar avenues, received upon said car, as a passenger thereon, the plaintiff's wife, Mary Holmes Van Horn, and for a valuable consideration, paid to the defendant by plaintiff's said wife, the defendant undertook and agreed with the plaintiff's said wife to carry her safely as such passenger on said

car to her point of destination on defendant's line of railway, to-wit, Delmar Garden, and to there stop said car and allow her a reasonable time and opportunity to alight in safety from said car. That said car was a public conveyance in charge of its drivers, its motorman and conductor thereon. Yet this plaintiff avers, that the defendant unmindful of its undertaking, and of its duty in the premises, did, whilst plaintiff's wife was such passenger on said car and before she reached her said point of destination, to-wit, at a point in St. Louis county about 800 feet east of said Delmar Garden, so recklessly and carelessly run and conduct said car and did so carelessly cause said car to run at a violent and reckless speed, as to cause the plaintiff's wife to fall and be thrown from said car, and to be so injured that she died from said injuries on the day aforesaid.

"And for a further assignment of negligence, the plaintiff avers that at the time the plaintiff's wife was so received upon said car, she was received as a passenger on the end of a seat of said car, which seat was so crowded that plaintiff's wife had no sufficient room to sit securely thereon, and was thereby exposed to the danger of being thrown from said car by any violent motion or shock to said car. Yet the defendant's servants, in charge of said car, did, whilst plaintiff's wife was so in said insecure position on said car, and without means adequate to secure her position on said car, cause said car to be run at a high and reckless speed and to sustain jerks and shocks, whereby the plaintiff's wife was caused to fall and be thrown from said car as aforesaid, which negligence of the defendant and its servants directly contributed to cause the injury and death of the plaintiff's said wife.

"And for another assignment of negligence the plaintiff avers that said car was an open car, with the seat on which his wife was so received as a passenger on said car extending to the side of said car without

any sufficient guard or protection to prevent her, as such passenger, from falling, or being thrown from said car, by its violent motion or shock. Which said insecure and defective condition of said car directly contributed to cause the injury and death of plaintiff's wife as aforesaid.

"And for another assignment of negligence the plaintiff avers that at the time of said injury and death of his wife, defendant's track on which said car was running was insufficiently ballasted and rough, and unsafe for the passage of vehicles, or cars thereon, by reasons of its causing the car to run rough, sway and sustain jerks and shocks, when the car attained high or even ordinary speed, which rendered the position of plaintiff's wife upon said seat very dangerous, and made it probable that she would be thrown from said car by said car running at a high or even ordinary speed. Yet with such condition of said track existing, defendant's servants in charge of said car, received plaintiff's wife as such passenger upon said seat, and, with gross negligence, caused said car to be run at a high speed and said car to sustain shocks and lurches, whereby plaintiff's wife was thrown from said car and injured, and died as aforesaid.

"That by the death of his wife caused as aforesaid, an action has accrued to the plaintiff to sue for and recover the sum of five thousand dollars according to the statute in such cases provided, for which sum he prays judgment."

The amended answer of defendant to the petition was a general denial, and a plea of contributory negligence on the part of the deceased:

(a) In that she voluntarily rose from her seat in the car while it was in motion, and while so voluntarily standing, and placing herself in a position of peril, fell or was thrown from the car.

(b) In that she voluntarily got off the car while it was in motion, and before defendant had time or

opportunity to stop the same, and so sustained the injuries causing her death.

The evidence on the part of the plaintiff tended to show the following facts:

Plaintiff's wife and three children, aged 9, 11 and 14 years respectively, were received on defendant's west-bound car on Delmar avenue, at the intersection of Hamilton and Delmar avenues, in the city of St. Louis, on the 18th day of May, 1901, their destination as passengers on said car being Delmar Garden, about half a mile beyond the city limits, in St. Louis county. The car was crowded, and at about the fourth or fifth seat from the rear the deceased and her children were received as passengers. Two large men occupied the same seat with the deceased and her three children, and it would appear that either the seat was not sufficiently large to accomodate all six occupants, or that the two men appropriated a larger share of the seat than necessary, as the deceased, who occupied a position on the extreme end of the seat on the north side, could find support thereon for only about one-half of her body. This half-sitting posture she occupied in the presence of the conductor, and whilst so sitting, as the car was running at a speed of from 20 to 25 miles an hour, the hat of deceased blew off, there being a strong wind blowing, and as she turned about to catch her hat she lost her balance, because of her insecure position and the swaying of the car, and fell or was thrown from the car, sustaining injuries from which she died.

The car in which deceased and her children were passengers was an open summer car, with seats running cross-wise, the south side of the car as it ran west being closed and protected against ingress or egress, and passengers boarded the car by means of a foot-board attached to and extending along the side of the car. This car, it appears, had reversible seats, which turned upon pivots about the longitudinal center of the seats, so that the seated passengers could face front when the car

changed its direction.   The pivot upon which the back of the seat turned was fastened to an upright stanchion which would be on the outside of and afford protection to a person occupying an ordinary position on the end of the seat, but it would appear from plaintiff's evidence that owing to the cramped position of the deceased she had not the advantage of the protection afforded by the stanchion but was compelled to sit with her back thereto, with nothing on the outside to protect her or prevent her falling off.

There was a dispute of fact as to the speed of the car at the time of the accident and as to how deceased left or fell off the car.   Plaintiff's evidence, as given by the three children who were with their mother, was that the hat of deceased blew off, and as she turned to the left to catch it she was thrown off by a lurch of the car.   One of the children testified that there was a jolt at the time, as if the car ran over a rock.   This evidence was corroborated to some extent by witness Bender, who testified that he heard an exclamation and instantly saw deceased fall from the body of the car. Another witness testified much to the same effect.

The evidence for the defendant tended to prove that deceased, after her hat fell off, got down on the step or foot-board, stepped or jumped off the car, and that she fell backwards, her head striking the ground, and was killed by the fall.   There was no evidence that deceased made any complaint to the conductor of the car or to anybody else of her alleged insecure position on the car or made any effort to secure a better seat.

At the close of plaintiff's evidence and again at the close of all the evidence, defendant asked an instruction in the nature of a demurrer to the evidence, which was refused, and defendant saved an exception. Defendant contends that the action of the court in refusing said instruction was error for which the judgment should be reversed, as there was no substantial evidence offered by the plaintiff to take the case to

the jury.   While the testimony was conflicting upon practically all of the material issues in the case, the evidence upon the part of the plaintiff tended to show that, owing to the crowded condition of the car in which she was a passenger, Mrs. Van Horn was compelled to occupy a seat which the conductor of the car must have known was unsafe, in that she had to sit upon the end of the seat in front of the upright stanchion and forward of the side support of the seat, so that there was nothing to prevent her from falling off the car. It was the conductor's duty to see that the deceased had a seat reasonably safe and secure, and knowing, as he must have known, her position to be unsafe, it was his duty to control the running of the car with a degree of care proportioned to the danger to which deceased was exposed by reason of her insecure position on the seat prior to and at the time of the accident.   As was said by VALLIANT, J., in Parks v. Railroad, 178 Mo. l. c. 116:   "In this case the carrier knew the position the passenger had taken and assented thereto, and undertook to carry him in that position. We say this because the motorman saw him there and warned him that it was a position of danger, and the conductor saw him there, and without warning and without remonstrance asked him for his fare and received it.   If that had been a position of such danger that the carrier was unwilling to assume the duty of carrying the plaintiff therein, the carrier had the right to require the plaintiff to leave the car.   It was an unusual position, one involving more than usual risk, and the carrier had the right to refuse to carry him in that position."

We fully agree with the contention of defendant that when a petition charges negligence specifically, as in the case at bar, the acts, or some of them, constituting negligence must be proven, and unless proven a verdict for the plaintiff cannot be permitted to stand, even though the petition be founded on the relation

of carrier and passenger; but we are unable to concur in the contention that there was a failure of proof with regard to the charge of negligence contained in the first assignment of negligence in the petition.

It is true that there was no evidence that the car was running at a violent and reckless rate of speed at the time of the accident, as alleged, but it is not necessary to plaintiff's recovery that such should have been the case. If the seat which deceased occupied at the time of the accident was unsafe and insecure, the conductor will be presumed to have known it, and it cannot be held that plaintiff is not entitled to recover because the evidence does not show that the cars at the time were running at a rapid and reckless rate of speed. The primary cause of the accident would seem to have been the insecure and dangerous position deceased occupied on the car, when considered in connection with the swaying of the car while running at the rate of twenty miles an hour, or at the ordinary rate of speed; so that it makes no difference, we think, that there was no evidence that the car was running at a high and dangerous rate of speed at the time of the accident, for an ordinary rate of speed was, under the circumstances, dangerous.

With respect to the second and third assignments of negligence in the petition, defendant contends that there was no evidence to sustain them; but we are unable to concur in this view. Without setting out the evidence in detail, it was, we think, sufficient to take the case to the jury.

It is claimed for defendant that the court erred in refusing defendant's instruction number 5, as asked, and then giving it in its amended form. The instruction is as follows:

"If the jury believes from the evidence that Mary Van Horn while a passenger on defendant's car of her own volition got off said car while the same was in motion, and that in consequence of her own act in get-

ting off of said car while it was moving she was thrown to the ground and sustained injuries of which she afterwards died, then the verdict must be for the defendant, even though the jury may further believe that the car had not sufficient guards to the seats, or was unduly crowded, or was running at an unusual rate of speed, or that the track was rough and caused jerks and shocks of the car run on the track of said railroad, *unless you further believe from the evidence that the crowded condition of the car, or the insufficiency of the guards on the seats, or the running at an unusual rate of speed, or that the track was rough and caused jerks and shocks in said car, or all combined, was the proximate cause of the injury."*

The amendment by the court to this instruction consists of that part which is in italics.

This instruction, in its original form, presented the law of the defense correctly, and should have been given if the same theory of the defense was not embodied in instructions three and four given at the request of the defendant. If Mrs. Van Horn stepped off the car while it was running she was guilty of negligence contributing to her injury, and the plaintiff could not recover, notwithstanding the fact that the car may at the time have been running at a high and dangerous rate of speed. The court, however, took a different view of the matter, and neutralized the force and effect of said instruction by adding thereto the words, "Unless you further believe from the evidence that the crowded condition of the car, or the insufficiency of the guards on the seats, or the running at an unusual rate of speed, or that the track was rough and caused jerks and shocks in said car, or all combined, was the proximate cause of the injury," when neither one, nor all of the facts combined, justified deceased in leaving the car while it was running. Plaintiff, however, contends that the third and fourth instructions given on the part of defendant were substantially the same as that

under consideration, and that, therefore, there was no error in modifying said instruction number five. Instructions three and four are as follows:

"3. While it is the duty of a carrier of passengers to use the greatest care to prevent its passengers from sustaining personal injuries, and to protect their lives, yet the passengers are also bound to exercise ordinary care so as to not place themselves in perilous positions, or do any act which might endanger their safety; so, in this case, it was the duty of the defendant to use the greatest care to prevent the said Mary Van Horn from sustaining personal injury and to protect her life, yet if the jury believe that the said Mary Van Horn, without the knowledge of the conductor or motorman in charge of said car, or before they could interpose to prevent her doing so, voluntarily placed herself in a position of peril where she would be likely to be thrown from said car, or if she voluntarily got off of the said car while it was in motion, before said conductor or motorman could interpose to prevent her from doing so, and that by reason of being thrown or getting off said car under such circumstances, she was thrown to the ground and sustained injuries of which she afterwards died, and that she would not have sustained such injuries had she not voluntarily placed herself in such perilous position, or voluntarily got off the car while it was in motion, then her own conduct was the direct cause of her death and plaintiff cannot recover.

"4. If the jury believes from the evidence that Mary Van Horn was seated on defendant's car, and that, before defendant's employees in charge of said car could interpose to prevent her, she voluntarily arose from her seat while the car was in motion at a point on defendant's railroad which was not a usual stopping place for said car, and voluntarily got off of said car before defendant's said employees could interpose to prevent her, and in getting off of said car she was thrown to the ground and sustained injuries of which

she afterwards died, and that she would not have sustained such injuries had she not attempted to leave said car while it was in motion, then such acts of said Mary Van Horn were negligent on her part, and plaintiff cannot recover.''

These instructions are based upon the theory that if Mrs. Van Horn voluntarily placed herself in a position of peril; or voluntarily left the car, *without the knowledge of the conductor or motorman in charge of the car, or before they could interpose to prevent her,* the company was not liable, while the fifth instruction, as asked by defendant, told the jury that if Mrs. Van Horn, ''of her own volition got off said car while the same was in motion, and in consequence of her own act in getting off said car while it was moving she was thrown to the ground and sustained injuries of which she afterwards died, then the verdict must be for the defendant,'' and this, too, whether or not the conductor or motorman knew or might have known that she was in the act of getting off the car, or whether they took any steps to prevent her doing so. That the instructions are bottomed upon different theories, and that the third and fourth instructions given at the instance of defendant do not clearly cover the point presented by the fifth instruction, as asked by defendant, is, we think, quite plain.

Defendant's chief defense was contributory negligence on the part of Mrs. Van Horn, and it had the right to have that question sharply presented to the jury.

For the error of the court in refusing the fifth instruction asked by defendant, the judgment is reversed and the cause remanded.

All concur.