JAMES MITCHELL v. WABASH RAILWAY COMPANY, HUSTON WHITLOCK and C. T. BURNLEY, Appellants.—69 S. W. (2d) 286.

Division Two, February 23, 1934.

*Homer Hall, S. J. Jones* and *Sebree, Jost & Sebree* for appellants.

*Trusty & Pugh* for respondents.

COOLEY, C.—Action for damages for personal injuries in which plaintiff obtained a verdict for $25,000. The circuit court required him to remit $10,000 of the verdict and upon that being done entered a judgment for him for $15,000, from which all the defendants have appealed.

Plaintiff had his right leg crushed by a turntable of defendant railway company at Kansas City. Defendants Whitlock and Burnley were employees of the railway company. Burnley was its foreman in charge of the men employed at and about the turntable and roundhouse and of the work being done and Whitlock was operating the turntable when plaintiff was injured. Both are charged with acts of negligence. Plaintiff's evidence tended to prove the following:

The turntable is set in a circular pit about one hundred feet in diameter and four or five feet deep. A wall with a top eighteen inches or two feet wide surrounds the pit. The table is about one hundred feet long extending across the pit, resting upon a structure in the center of the pit upon which it revolves and at each end upon a four-wheel truck. The trucks move on a circular track built in the pit near the wall. Except for the table and its supports the space inside the pit is open. The table is wide enough for one railroad track which runs the length of the table. The rails thereon are on a level with those on the tracks leading to it from the roundhouse and its floor is even with the bottom of the rails. It is operated by electricity, the operating mechanism being in a cab located beside the table at one end thereof, that end being called the cab end. The table can be moved in either direction at the election of the operator. About one hundred feet west of the turntable the railway company maintains a roundhouse in which there are eight stalls from each of which a track leads to the table, terminating at the inner edge of the top of the wall, so that engines can pass therefrom onto the table. Those tracks are numbered consecutively 1 to 8 inclusive, beginning with the southernmost.

At or near each end of the table there is an electric light, referred to as a "reflection light," some eighteen inches or two feet above the floor, having a cup-shaped shade or reflector, the purpose of which is to throw the light upon the ends of the rails so that in "spotting" the table the operator can see when the track on the table is properly aligned with the one leading from the roundhouse. Those lights furnish but little illumination except immediately about the ends of the rails. There is an electric light in the cab of the turntable which we shall hereafter refer to as the cab light. At each of the two corners of the roundhouse nearest the turntable there is a large electric light, called a flood light, for the purpose of lighting the premises generally for the convenience and safety of employees.

Plaintiff was an engine wiper but from time to time performed other services as ordered by Burnley. He was familiar with and had at times operated the turntable which, however, was usually operated by Whitlock. Burnley and Whitlock had instructed plaintiff how to operate the table and in so instructing him Burnley, in the presence of Whitlock, had told him always to "flash" the cab light before moving the table as a signal that the table was about to be moved and to leave it turned on. When operating the table plaintiff always turned on that light when about to start it and it was the custom for the operator so to turn on said light as a signal. It was also customary to have the flood lights turned on at night.

Plaintiff was injured in the nighttime. He had been working in the roundhouse about an engine and had started to a hydrant north of the tracks leading from the roundhouse to the turntable to get a

drink of water when he met Burnley. The turntable was then standing with the cab at track No. 2. Burnley told plaintiff to get his drink and then to go and operate the turntable and place it so as to receive an engine from track No. 5; that he, Burnley could not find Whitlock. Plaintiff got his drink and came back toward the turntable intending, in obedience to Burnley's order, to go to the cab and operate it. The flood lights were not on and it was dark, though he could see the tops of the rails as he crossed the tracks toward the table. He made no complaint of the flood lights being out when Burnley ordered him to operate the table because Burnley ordered him to go and operate it. As he approached the table the cab light was not on and he did not know or suspect that anyone was in the cab. He stepped upon the pit wall and was in the act of stepping from the wall onto the floor of the table near the "north" corner thereof when the table, without the cab light being turned on or signal or warning of any kind, was started in motion, moving northward. Just before or about the time he started to step on the table plaintiff heard a signal from the engine in stall No. 5 that it was ready to come out to the table. At the moment plaintiff discovered the table was moving he had started to step onto it, one foot being still on the wall, and was unable to check himself. His foot came down upon some movable object on the floor of the table, possibly a piece of coal or a tool. He could not tell what it was because in the dim light he did not see it. The unexpected movement of the table, aided perhaps by his stepping upon said object, caused him to fall upon the floor of the table with his right leg "hanging down" over the edge and before he could recover from that position his right foot and leg were caught and crushed, "ground," between the table and the wall. When plaintiff fell he "commenced to holler," and Whitlock, who had started the table, stopped and reversed it, moving it southward and releasing plaintiff. "He didn't stop immediately, I was caught and ground a ways." Plaintiff was taken to a hospital where his leg was at once amputated.

Defendants' evidence tended to prove that plaintiff was not ordered to operate the table and had no business upon or about it; that the flood lights were burning (concededly it was customary to keep them burning at night); that it was not the custom for the cab light to be turned on before starting the table and that plaintiff had not been so instructed; that the only purpose of that light was to illuminate the interior of the cab in case repairs had to be made or work done about the mechanism therein; and that the table was started southward, not northward. It appears from defendants' evidence that the roundhouse hostler requested Whitlock, in Burnley's presence, to move the table and set it for track No. 5, and that Burnley saw Whitlock walk toward the table for that purpose, knowing it to be his purpose, just before plaintiff was injured. This was

after Burnley had ordered plaintiff to go and operate it, if that order was given as plaintiff testified. It is conceded that Whitlock did not flash or turn on the cab light before starting the table and that no warning or notice was given plaintiff that it was about to be moved by another than himself.

Plaintiff's petition alleges negligence in permitting and causing the turntable to be started without warning or notice to plaintiff after he had been ordered to operate it; in Burnley's failure to notify Whitlock that plaintiff had been ordered to operate it and to inform plaintiff, after ordering him to operate it, that Whitlock was going to operate it; in setting the table in motion without turning on the cab light, in violation of the custom and the instructions which defendants had given plaintiff; and in failure to have the flood lights burning. There was also an allegation upon the theory of the humanitarian doctrine which was abandoned. The sufficiency of the petition is not assailed. Such further references to the facts as may be necessary will be made in the course of the opinion.

I. At the close of the evidence defendants, collectively and separately, requested peremptory instructions directing verdicts for them, which were refused. They allege error in the refusal of those instructions. If, as plaintiff testified and under the conditions he described, he was proceeding in obedience to an order of his foreman to go upon the table and operate it, having no reason to expect it to move until he moved it, and Burnley, after giving the order knowing or having means of knowing, that plaintiff was proceeding in obedience to it, caused or permitted the table to be set in motion by another without notice or warning to plaintiff when he knew or should have known that such unexpected movement of the table might cause injury to plaintiff, it cannot be successfully argued that Burnley was not negligent; particularly in view of the further testimony that it was the custom and Burnley had so instructed plaintiff that the cab light should be turned on before the table was moved, a custom and direction that plaintiff testified he relied upon. In Crane v. Liberty Foundry Co., 322 Mo. 592, 613, 17 S. W. (2d) 945, 955, the court quoted with approval the general rule stated in 39 Corpus Juris, 483, thus:

"Since it is the duty of a servant to obey an order given by one in authority over him, if not manifestly unreasonable, the master must use reasonable care to protect his servants from danger in the execution of orders, and will be held liable for his own or his vice-principal's negligence in this regard." [322 Mo. l. c. 613.]

Whitlock, according to plaintiff's testimony, knew the custom above mentioned and knew that Burnley, the foreman in charge, had directed that such practice be observed. If the custom was sufficiently proved to make a submissible issue thereon, Whitlock was

negligent in starting the table without turning on the cab light. We think the evidence regarding the custom and Burnley's instructions to plaintiff in the presence of Whitlock relative to turning on the light was sufficient to take that question to the jury, a point to be discussed later in connection with another contention.

We do not understand defendants seriously to urge that plaintiff did not make a submissible case, especially as against Burnley and the railway company, if his testimony at this trial is to be credited. If such contention is intended to be urged it cannot be sustained. It appears, however, from defendant's brief and printed argument, that their principal contention on this point is that plaintiff's testimony at this trial was so contradicted by witnesses for defendants and by a written statement he made eighteen days after his injury and by his testimony at a former trial of the case, he stating generally at this trial that he had testified to the truth at the former trial, that his testimony cannot be taken as substantial evidence of the facts testified to by him.

Eighteen days after his injury plaintiff was visited at the hospital by a claim agent of the railway company who wrote and got him to sign a statement which was offered in evidence. It contradicted plaintiff's later testimony in some vital respects and omitted mention of Burnley's order to him to operate the table. If the statement is the truth and the whole truth plaintiff had no case. He testified that when he talked to the agent and signed the statement he was suffering severely, having undergone another operation that morning, was nervous, restless and sleepless, that he paid but little attention to what he was saying and doing, or to what the agent was asking him, did not read the statement but simply signed it as requested, and in substance and effect that he did not fully know what he had said or what the statement as signed contained; that he told the agent Burnley had ordered him to operate the table; that portions of the statement were read to him before he signed but he did not know whether it was all read or whether it was read correctly; that he would have done anything in his then condition "to get him (the agent) away." Defendant's evidence tended to show that the statement was made and signed understandingly.

Excerpts of plaintiff's testimony at the former trial referred to, which were introduced by defendants, would, unexplained, give the impression that he had there testified that he knew the turntable was in motion before he attempted to step upon it. But from other excerpts, introduced by plaintiff, it appears he there explained, as he did on the instant trial, that what he meant was that the table was not moving when he started to take the step with the foot that landed on the table, but that when he "started" to place that foot on the table and his body had gotten into such position that he could not check it or avoid completing the step he knew the table had

started and was in motion. From the excerpts introduced we cannot say that his testimony as a whole was substantially different from that given by him on the instant trial. In any event neither that alleged contradictory testimony nor the contradictions between his written statement, with his explanation thereof, and his testimony at the trial present such unexplained contradictions as would authorize the court, if it could be so authorized in any event, to say as a matter of law that plaintiff's testimony at the instant trial did not amount to substantial evidence. Plaintiff was contradicted by defendants Burnley and Whitlock and by other witnesses. Some of defendants' witnesses had given testimony previously which in some respects differed from that given by them on this trial. All of these conflicts in the evidence were for the jury to resolve. We have not attempted to state in detail all the circumstances shown in evidence. But we have carefully examined the evidence and are convinced that the requested peremptory instructions were properly refused.

II. Defendants urge that plaintiff's Instructions 1 and 3 are erroneous. Instruction I submits the issues as to Burnley and the railway company; Instruction 3 as to Whitlock and said company. Each hypothesizes conjunctively the facts pleaded by plaintiff and which his evidence tends to prove, including Burnley's alleged order to plaintiff to operate the table, except that neither requires a finding that the turntable was started in motion *northward*. To illustrate, Instruction 1, after stating other facts necessary to be found, says: "If you further find from the evidence that the table was negligently permitted to be set in motion or started under the foregoing facts and circumstances, . . . without reasonable warning to the plaintiff," etc. Similarly, Instruction 3 omits a requirement that the jury find the table to have been started northward. The instructions are long and need not be set out. The only complaint of them is- that they do not require the jury to find that the table was moving northward when plaintiff stepped upon it. It is contended that the omission of such requirement broadened the issues made by the pleadings and produced conflict between those instructions and defendants' given Instruction Q which told the jury that "if you find and believe from the evidence that at the time plaintiff was injured the cab end of the turntable was moving south, your verdict must be for the defendant(s)."

Plaintiff's petition first alleges the relationship to the controversy of the parties named, the location, etc., of the turntable, roundhouse, lights, etc., the customs above referred to, *scienter* on the part of defendants and that while plaintiff was stepping onto the table it "was negligently caused to move northward," causing plaintiff to fall and be injured. It then alleges: "At said time and place defendants were guilty of negligence as follows:" and proceeds to

set out specifically the acts of commission and omission charged as negligence and in so specifying the acts of negligence it does not state the direction in which the table was started. It there pleads Burnley's order to plaintiff and that while plaintiff in obedience thereto was stepping upon the table "the defendants negligently caused and allowed said table to be started under all the above circumstances and conditions without reasonable warning to plaintiff," etc. It further pleads as additional specifications of negligence that the table was negligently "set in motion" without turning on the cab light, in violation of the custom and orders, and was negligently "started" without having the flood lights turned on. It is only in that part of the petition following the words: "At said time and place the defendants were guilty of negligence as follows," that negligent acts and omissions of Burnley and Whitlock are specified. The petition then proceeds: "At said time and place the negligent acts and omissions of said Burnley and the negligent acts and omissions of said Whitlock concurred with the negligent acts and omissions of said defendant Wabash Railway Company in causing the plaintiff's right leg to be caught and crushed," etc., specifying plaintiff's injuries and damages and concluding with a prayer for judgment.

■■ It is well settled that the issues submitted by the instructions must be within the scope of both the pleadings and the evidence and that the issues made by the pleadings cannot be broadened by the instructions. It is also the rule that where the plaintiff's instruction purports to cover the whole case and directs a verdict for him upon a finding of the facts therein hypothesized and omits a fact which must be found in favor of the plaintiff before there can be a recovery such omission cannot be cured by an instruction given for the defendant requiring such fact to be found. In such case the defendant's instruction does not cure the omission in that of the plaintiff but produces a conflict in the instructions. [State ex rel. Long v. Ellison, 272 Mo. 571, 199 S. W. 984.] But where the fact omitted from the plaintiff's instruction is in the nature of a defensive feature and does not constitute an element of his cause of action the omission may be cured by an instruction given for the defendant submitting that feature. [Heigold v. United Railways Co., 308 Mo. 142, 157, 271 S. W. 773.]

■ In the instant case we do not construe plaintiff's petition to charge or attempt to charge actionable negligence in a northward as distinguished from a southward movement of the turntable. The gravamen of the charge is the negligent setting in motion of the table under the circumstances and conditions detailed without notice or warning to him while he was performing a duty in obedience to an order of his master. The *direction* in which the table was set in motion became important as an evidentiary feature of the case but

we do not think it was a substantial element of plaintiff's cause of action. The petition would have stated essentially the same and as good a cause of action had the word "northward" been omitted therefrom. Nor do we think that because of the use of that word in the petition the defendants were in any way misled or put to a disadvantage in preparing and making their defense.

In Bradley v. Becker, 296 Mo. 548, 246 S. W. 561, the petition charged negligence in that the defendant's automobile truck was operated at "a high and dangerous speed, to-wit, 25 miles per hour." The instruction there under review directed a finding for the plaintiff if the jury found that the truck was operated at "a high and dangerous speed," not specifying the rate of speed. It was contended that it broadened the issues made by the pleadings because it permitted recovery upon the finding of a lower speed than that alleged and relied upon in the petition. The contention was held untenable.

In Wessel v. Lavender, 262 Mo. 421, 171 S. W. 331, the plaintiff's petition alleged that she was ravished while in an unconscious state resulting from medicine administered to her by the defendant, her physician. Her evidence tended to show that she was asleep and thus unconscious but did not prove, and her instructions did not require the jury to find, that her unconsciousness resulted from the drug administered by the defendant. An instruction given for the defendant did so require. It was held prejudicially erroneous. the court saying that the cause of her unconsciousness was not an issue and denying the defendant's contention that by her pleading the plaintiff had restricted her cause of action to rape committed upon her while unconscious as a result of medicine administered by the defendant. The court said, 262 Mo. l. c. 429-30:

"The rule is that proof is only required of those allegations necessary to a recovery, and that those unnecessary to that end may be eliminated as surplusage. [Mehan v. St. Louis, 217 Mo. 35, 46; Frederick v. Allgaier, 88 Mo. 598, 603-4; Smith v. Fordyce, 190 Mo. 1.] The rule more specifically stated is that where a good cause of action is well stated in the pleading, all additional averments consistent therewith, whether by way of inducement, explanation or additional particulars, may be rejected as surplusage, and a recovery may be had upon proof of the essential facts remaining."

In Took v. Wells, 331 Mo. 249, 53 S. W. (2d) 389, the plaintiff was struck and injured by a street car as she walked beside a loop of the defendant's track. Her petition alleged that she was struck by a certain car, the one immediately preceding the one from which she had just alighted. Her proof showed that it was not that car but another one which struck her. There were cars all around the loop. Her instructions authorized recovery upon a finding that she was struck by the car designated in the petition, of which there was no

proof. Because of that variance between pleading and proof the trial court set aside the verdict for her and ordered a new trial. This court reversed the order, holding that the variance had not misled or injured the defendant and that the error in the instructions was nonprejudicial. For further illustrative cases see Van Horn v. St. Louis Trans. Co., 198 Mo. 481, 95 S. W. 326; Morris v. Atlas Portland Cement Co., 323 Mo. 307, 336, 19 S. W. (2d) 865, 877; Alvarez v. Traffic Motor Corp. (Mo. App.), 271 S. W. 531; Heryford v. Spitcaufsky (Mo. App.), 200 S. W. 123; Callicotte v. C. R. I. & P. Railroad Co., 274 Mo. 689, 204 S. W. 529.

In the case at bar plaintiff's instructions hypothesized and required the jury to find the facts constituting the essential elements of his pleaded cause of action and necessary to entitle him to recover. If defendants were entitled to have the jury instructed that plaintiff could not recover if the turntable was started southward rather than northward they got that benefit by their Instruction Q. We do not think plaintiff's instructions broadened the issues or conflicted, erroneously and prejudically, with defendants' instructions. Defendants cite State ex rel. Central Coal & Coke Co. v. Ellison, 270 Mo. 645, 195 S. W. 722; State ex rel. Long v. Ellison et al., supra; Macklin v. Fogel Constr. Co., 326 Mo. 38, 31 S. W. (2d) 14; Blackwell v. Union Pacific Railroad Co., 331 Mo. 34, 52 S. W. (2d) 814. We think those cases are clearly distinguishable from the case before us. The point is ruled against defendants.

■ III. Defendants' next contention is that the court erred in refusing to give their requested Instructions N and G.

(a) Instruction N would have told the jury that there could be no recovery against any of the defendants on account of the alleged claim that Whitlock started the table "without warning in violation of the alleged custom and general practice to give warnings before setting said turntable in motion, and that said charge of negligence is withdrawn from the consideration of the jury."

It is charged in the petition that "it was the regular custom *and the orders* of defendants" (italics ours) to turn on the cab light as a signal before starting the table, which custom *and order* were negligently violated. According to his testimony plaintiff had been directed so to do by Burnley in the presence of Whitlock when he was instructed by both of them how to operate the table. That fact, if it had no other justification in the case, would have some bearing on the question of whether or not plaintiff's claimed reliance thereon was justified and upon the question of whether or not he was guilty of negligence. By instructions given for both sides the jury was required to find that plaintiff was not himself negligent. The instruction sought to withdraw "said charge of negligence" from the consideration of the jury. In view of the allegations of the petition

and the evidence in support thereof the requested withdrawal might have been understood by the jury to include Burnley's direction given to plaintiff in Whitlock's presence which was coupled in the petition with the custom as part of that "charge of negligence." And doubtless, too, the instruction withdrawing the "charge of negligence" from consideration by the jury would have been understood as withdrawing from their consideration the evidence offered in support thereof. Another fact must be remembered. If, as he testified, plaintiff was ordered by Burnley to operate the table, Burnley and the railway company owed him the duty to use reasonable care to protect him from injury while acting in obedience to that order. If permitting the table to be moved without warning to him while he was so engaged threatened injury to him and Burnley so knew or in the exercise of ordinary care should have so known, then plaintiff was entitled to warning of such impending movement of the table regardless of custom. While to the trained legal mind the instruction as worded would not withdraw that phase of the question of warning, such fact might not be understood by the jurors. We think the instruction, if given, would have been confusing and improper at least in its application to Burnley and the railway company and was properly refused even if there were no sufficient proof of the alleged custom to make that question submissible.

■ On the latter point defendants insist that a custom cannot be proved by the *contradicted* testimony of a single witness, citing Baker v. McMurry Contracting Co., 282 Mo. 685, 223 S. W. 45, and several cases of like tenor from other jurisdictions. We think this contention sufficiently answered by O'Donnell v. Baltimore & O. Railroad Co., 324 Mo. 1097, 26 S. W. (2d) 929. There the allegation of negligence upon which the plaintiff's case rested was violation of a rule and custom to sound warning before moving a standing engine. The plaintiff's evidence tended to prove the custom. Division One of this court, by ELLISON, C., said:

"No objection was made at the time to the respondent's proof of the custom, but appellant contends here it had no probative force or legal effect because the practice was not shown to have been uniform, general and long continued, citing such cases as Baker v. McMurry Contracting Co., 282 Mo. 685, 701, 223 S. W. 45, 50, and U. S. Shipping Board E. F. Corp. v. Levensaler, 290 Fed. 297, 301 et seq. These cases state the doctrine when the effort is to bring home knowledge of a custom in a trade or business to one not engaged in it, but they have no application to the facts here. A servant working for a master is engaged in the same business as the master, and as between them the custom need not be proven with such fullness as would make it a rule of the common law. [St. L. & S. F. Ry. Co. v. Jeffries, 276 Fed. 73, 75; Koonse v. Mo. Pac. Ry. Co., 322 Mo. 813, 18 S. W. (2d) 467, 471, certiorari denied 280 U. S. 582, 50 Sup. Ct. 34, 74 L. Ed.

57; 17 C. J., sec. 19, p. 461.]'' [324 Mo. l. c. 1107, 26 S. W. (2d) l. c. 933.]

In the O'Donnell case the plaintiff's evidence tending to prove the custom was not contradicted. But in St. L. & S. F. Ry. Co. v. Jeffries (C. C. A.), 276 Fed. 73, 75, cited in the O'Donnell case, the plaintiff's evidence as to the existence of the custom was contradicted. It was an action for damages for personal injuries. In the course of its discussion the court said:

''We are of the further opinion that it was not incumbent on plaintiff to show such a custom as would make it a rule of the common law. A servant has the right to rely on signals and warnings customarily given in the conduct of the business in which he is engaged, and if the master fails to give these, he is negligent.'' [276 Fed. l. c. 75, citing many cases.]

In this case plaintiff testified without objection to the existence of the custom to turn on the cab light before starting the turntable in motion. Defendants Burnley and Whitlock denied that there was such custom. One or two other witnesses said they knew of no such custom. We think the question was for the jury.

■ (b) Defendants' refused Instruction G sought to withdraw from the consideration of the jury all evidence of the alleged failure to have the flood lights burning and to direct the jury not to consider it. It was conceded that it was customary to keep those lights burning for the convenience and safety of employees. Burnley testified that employees were likely to be about or even upon the table. ''The purpose of having those lights burning is so that men can see. . . . You can't tell where the section men will walk and you can't tell who might go over that table; and you can't tell what time somebody might be on that table.'' Plaintiff testified that it was dark, the flood lights being off. Whitlock said he did not see plaintiff before he started the table. True, he also said he could have seen him had plaintiff been where he testified he was, but the jury might well have believed he would have been more likely to see him and that plaintiff would more likely have discovered Whitlock's presence in the cab through the open window as well as the object on the floor of the table upon which he stepped, had the flood lights been on. That evidence was clearly competent. The light or absence thereof was a part of the environment of the accident. That withdrawal instruction was properly refused.

■ IV. Appellants contend that the judgment of $15,000 is excessive, citing Hurst v. Chicago, B. & Q. Railroad Co., 280 Mo. 566, 219 S. W. 566; Greenwell v. Chicago, M. & St. P. Ry. Co. (Mo.), 224 S. W. 404; Miller v. Schaff (Mo.), 228 S. W. 488; Foster v. Davis (Mo.), 252 S. W. 433; Thompson v. Smith (Mo.), 253 S. W. 1023, and Stahl v. St. L.-S. F. Ry. Co. (Mo.), 287 S. W. 628.

Plaintiff was injured August 6, 1926. This trial was in December, 1930. At the time of his injury he was thirty-seven years old and was earning $3.04 per day. His leg was badly crushed from the foot to above the knee and was amputated above the knee. The only evidence as to the length of the stump is that of plaintiff: "I have about a six inch stump from the hip," a very short stump for practical use of an artificial leg. Eighteen days after the amputation plaintiff had a further surgical operation on the stump, the exact nature of which is not disclosed. He suffered a great deal of pain. He could not get around on crutches until about a year after the injury and he earned no money for about two years. Meantime, he had procured an artificial leg and after trying a year and a half became able to "get around on it." At the time of this trial he owned a horse and wagon and "hauled trash and picked up papers," earning about $10 a week. "After feeding my horse I have $6 or $7 left." He earns no other money. He cannot wear the artificial leg all the time, "sometimes two or three days, maybe longer, and sometimes not so long," because the stump gets sore and he has to let it rest. The exact amount of earnings he had lost up to the time of this trial, more than four years after his injury, is not shown but it is apparent that he had been able to earn but little. We have considered the cases cited. In one, Stahl v. St. L.-S. F. Ry. Co., supra, the facts on this issue were similar to those of the instant case. The plaintiff there had a six inch stump. He was two years younger than this plaintiff and earned a little more at the time of his injury but it does not appear that he had sustained as great a loss of earnings up to the time of the trial. After mature reflection we are of the opinion that on the facts of this case the judgment is not so large as to call upon this court to require a further *remittitur*. The judgment of the circuit court is affirmed. *Westhues* and *Fitzsimmons, CC.,* concur.

PER CURIAM:—The foregoing opinion by COOLEY, C., is adopted as the opinion of the court. All the judges concur.