Willis CLARK and Service Fire Insurance Company, Respondents,

v.

Marvin HOWARD and Olen Howard, d/b/a Howard Construction Company, Appellants.

No. 22106.

Kansas City Court of Appeals. Missouri.

Dec. 6, 1954.

W. K. Gibson and Martin & Gibson, Sedalia, for appellants.

Miller & Miller, Bamburg & Bogutski, Sedalia, of counsel, for respondents.

SPERRY, Commissioner.

Willis Clark, one of plaintiffs, sued defendants, Marvin and Olen Howard, d/b/a Howard Construction Company, for damages growing out of personal injuries received when Clark's antomobile collided with defendants' truck. Clark's antomobile was damaged in the collision and Service Fire Insurance Company, the other plaintiff, sued for the amount it paid Clark for repairs on said automobile. Clark had a judgment for $3,500, and the Insurance Company had a judgment for $274. Defendants have appealed.

The collision occurred on Highway 65, a few feet north of the city limits of Sedalia, Missouri, during the afternoon of December 30, 1952. The weather was clear, pavement dry, visibility good, and there was no other traffic within sight at that time. Defendants maintain a building on the east side of the highway, with two driveways leading into the property, known as the north and south driveways. The building sits some 40 feet east of the highway with gas pumps located some ten feet west thereof.

Clark testified to the effect that he was traveling south at a speed of 60 or 65 miles per hour, when he came over a crest, some 1400 feet north of the point of collision; that he saw defendants' dump truck towing a large earth moving scoop, proceeding southward, about one-fifth of a mile ahead; that the truck was traveling at a much slower rate of speed than was Clark; that he slowed his car and, when about 100 feet behind the scoop, he increased his speed to

from 40 to 50 miles per hour, and turned into the east lane of the highway to pass; that he could not say that he sounded the horn when he began the passing movement, although "I always do"; that the overall length of the truck and scoop was some 43 to 45 feet; that when his car was about even with the rear end of the scoop the truck began turning to the left, across the highway, to enter the south driveway of defendants' premises; that the scoop had no signal light on the rear, nor did he observe the truck driver give any signal indicating that he was going to make a left turn; that he turned his automobile to the east and put on the brake in an effort to avoid the collision; that the wheels of the car slid; that the collision occurred about in the center of the south driveway of defendants' premises; that the right front of the automobile came in contact with the left front of defendants' truck, off of the pavement, but that the rear part of plaintiff's car may have been on the east edge of the pavement.

On further examination Clark stated that the truck began its left turn when about opposite the south driveway; that his car was about in front of the north driveway at that time; that it was about 150 feet north of the truck; that he was 75 or 80 feet back of the scoop; that it is about 100 feet between the driveways; that all of those figures as to distances are merely estimates. He stated that the scoop is 7 feet 8 inches high and 10 feet 4 inches wide and, with the tongue, 27 feet 10 inches long; that the truck is from 16 to 18 feet in length.

Robert Clark, a brother of plaintiff, was a passenger in the automobile at the time the collision occurred. He stated that, as they traveled south on the highway, after coming over the crest, he was watching something in the field; that, when he directed his attention to the road, the car was 30 or 40 feet behind the scoop and had started around it; that, when the car was about opposite the middle part of the scoop, the truck began a left turn; that his brother applied the brakes and the car went off

the shoulder of the road; that the right front of the car struck the left front of the truck and bounced off; that the car came to rest between a telephone pole (on the north side of the south driveway) and two parked cars; that the collision occurred while the truck was on the highway and that, after the collision had occurred, the truck continued down the highway; that, as the car came over the crest, it was proceeding at a speed of between 55 and 65 miles per hour; that he did not remember whether his brother sounded the horn before attempting to pass; that the truck was traveling from 5 to 15 miles per hour when they started to pass; that the car was traveling from 30 to 40 miles per hour; that he never saw the truck driver give any signal although he could see the front fender of the truck when the car was even with the back part of the scoop; that he did not see the driver of the truck on the running board.

The truck driver stated that, as he approached the defendants' property he opened the truck door, stood on the running board and signaled a left turn with his hand and arm pointing downward and to the left; that he pulled slightly to the left of the center line, slowed, and twice stood on the running board, signaling a left turn; that he did not see plaintiff's car and heard no horn. Both defendants testified, as did a gasoline pump attendant, that they saw the truck driver stand on the running board and signal a left turn before starting said turn; that he kept the door open continually from several hundred feet up the road until the collision occurred; that they heard no horn signal by plaintiff, at any time prior to the collision; that they watched the approach of the truck and of the automobile; that the automobile was traveling at a high rate of speed, as high as from 90 to 95 miles per hour; that it did not slow down until Clark put on the brakes when the truck began to turn.

Trooper Gregory, of the highway patrol, stated in evidence that he viewed the scene of the collision; that the automobile had left tire marks for a distance of 132 feet,

774

running northward from the point of collision.

Defendants contend that their motion for a directed verdict, filed at the close of all of the evidence, should have been sustained for the reason that plaintiff was guilty of contributory negligence as a matter of law in that he failed to sound the horn as a signal of his intention to pass.

Section 304.020(5), V.A.M.S., requires the sounding of a signaling device prior to passing a motor vehicle proceeding in the same direction as that of the passing vehicle. However, defendant had the burden of proving contributory negligence, as it is an affirmative defense; and plaintiff was not required to prove that he was free of negligence. Allen v. Wilkerson, Mo.App., 87 S.W.2d 1056, 1061. Contributory negligence as a matter of law can seldom be established by oral testimony offered solely by defendant, and usually it must appear in the case of the plaintiff, or be established by testimony on the part of defendant which plaintiff concedes to be true, or by documentary evidence or proof of facts or circumstances by defendant which leaves room for no other reasonable inference. Knight v. Richey, 363 Mo. 293, 250 S.W.2d 972, 975; Thompson v. Byers Transportation Company, 362 Mo. 42, 239 S.W.2d 498, 501.

Measured by the above rule, we cannot sustain defendants' contention on this point. While plaintiff pleaded that he sounded a horn signal, he offered no evidence tending to prove the allegation nor did he offer evidence to the effect that he did not sound the horn.

Defendants' evidence was to the effect that plaintiff failed to sound a horn signal at any time prior to the collision. The testimony of their witnesses was to the effect that said witnesses watched the approach of both vehicles, that their hearing was good, but that they heard no horn signal by plaintiff. However, the jury was not required to believe defendants' witnesses. Young v. Wheelock, 333 Mo. 992, 64 S.W.

2d 950, 953. The jury is the sole judge of the weight and credibility of the evidence. We are bound by their finding in this case.

It is also urged that plaintiff was guilty of contributory negligence as a matter of law because, it is said, his evidence disclosed that he approached the truck and scoop at a speed of 50 miles per hour which, it is said, was excessive under all of the circumstances. Plaintiff's brother testified to the effect that the speed of the automobile was from 30 to 40 miles per hour when attempting to pass, and plaintiff said that, when he started the passing movement, he increased his speed to from 40 to 50 miles per hour. No traffic was in sight, and whether or not such speed was excessive, under all of the circumstances, was for the jury.

It is also urged that plaintiff was guilty of contributory negligence as a matter of law because he did not apply the full force of his brakes when the truck began its turn. Clark stated that he did not do so because he feared sliding in the gravel, and into a ditch. Whether or not he was negligent in that respect was a question for the jury.

It is next urged that plaintiff's Instruction No. 1, is erroneous, on the ground that although common law negligence was pleaded, statutory negligence only was submitted.

Plaintiff pleaded that defendants' agent "without warning made an immediate left turn directly in front of the plaintiff's automobile, severely damaging said automobile and injuring the plaintiff." He also pleaded that the negligence complained of consisted (1), in making a left turn, as above stated, without giving proper and timely warning of defendants' intention so to do, and (2), in towing the scoop, of excessive width, behind a dump truck without proper means and facilities on the part of the driver for giving timely warning of intention to make a left turn, or without adequate devices to properly signal.

Defendants' evidence, as well as that of plaintiff, was to the effect that the scoop was not equipped with any signaling device.

Plaintiff's testimony tended to prove that defendants' driver gave *no* signal. Defendants' driver stated that he stood out on the running board of the truck and signaled, with his arm and hand pointed to the left and downward below the horizontal. Other witnesses for defendants corroborated the driver in that particular. There was no evidence, from any source, tending to prove that defendants' driver attempted to give any signal other than the arm signal above-mentioned.

■ Where it is apparent, from the pleadings, the admission of parties in the trial of the case, or from the evidence, that certain facts are conceded, then such facts are no longer at issue and need not be submitted in an instruction. State ex rel. Fourcade v. Shain, 342 Mo. 1190, 119 S.W. 2d 788, 789, 790. The situation here shown brings the case at bar within the above rule of law.

■ It is true, as defendants contend, that it has been held error to base an instruction on negligence upon an inapplicable statute; but the fact that the only signal that is claimed to have been given in this case happens to be an arm signal, such as is contemplated by a statute, not relied on, is immaterial. The instruction complained of is within the pleadings and the evidence; and it squarely submits the issue, sharply drawn, decisive of this case under plaintiff's theory of negligence; failure to give any warning of an intention to make a left turn.

■ Complaint is made of the failure of plaintiff to require a finding that he sounded the horn as pleaded in his petition. We have ruled herein that failure of an operator to sound a horn as a signal of his intention to pass a vehicle traveling in the same direction is an affirmative defense. While evidence of failure of plaintiff to sound the horn, under such circumstances, would constitute evidence of contributory negligence, it is not incumbent upon plaintiff to offer proof thereof. If defendants plead the issue of contributory negligence and there is substantial evidence thereof, it is not re-versibly erroneous for plaintiff to fail to instruct thereon if it is submitted under defendants' instructions, as was done in the case at bar under Instruction A-2. Mitchell v. Wabash Ry. Co., 334 Mo. 926, 69 S.W.2d 286, 290.

■ Defendants also contend that the verdict is excessive. The evidence on behalf of plaintiff was to the effect that, a few days after the collision occurred, he sensed pain in his lower back. He sought the services of Dr. Rhodes, who testified to the effect that he examined him on January 7, 1953, and treated him. He stated that he found muscle spasm in the low back area, that plaintiff used his left leg poorly in walking, and that the ankle jerk in the left ankle was less than that in the right, indicating an injury to the disc in the region of the fifth lumbar vertebrae and first sacral. He gave him medicine for pain and, eventually, caused an X-ray picture to be taken. The picture was in evidence and the doctor stated that it disclosed a narrowing of the disc at the point above-mentioned. He stated that there was evidence of nerve impingement at that point; that the disc was damaged, and that the condition would be permanent.

Plaintiff, 22 years of age, testified to the effect that he was employed, at the time the collision occurred, as a salesman, earning $350 per month; that, because of pain in the back, he was unable to carry on his work, quit that employment, and lost a month's time; that he is now engaged in other employment but that, when he is subjected to strain, he has pain in his back; that such pain struck him a short time before trial, October 8, 1953, while he was cleaning out the back of his car; that he had to desist from work until it cleared; that he had been treated several times by Dr. Humphrey, at Warsaw; that he had expended some $65 for medical services but had not paid either of the doctors above-mentioned.

We could not say that a verdict for $3,-500 for a disabling back injury that will likely prove permanent, in the case of a 22 year old man otherwise in good health and

good physical condition, is such as to shock our conscience. See Gromowsky v. Ingersol, Mo.App., 241 S.W.2d 60, 63, 64.

The judgment should be affirmed.

BOUR, C., concurs.

PER CURIAM.

The foregoing opinion of SPERRY, C., is adopted as the opinion of the court. The judgment is affirmed. All concur.